## MANDA BLOM v. THOMAS G. McNEAL.[1]

April 23, 1937.

No. 31,099.

*Alphonse A. Tenner,* for appellant.
*H. N. Jenson,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff prevailed in her action against defendant to recover damages for personal injuries suffered in an automobile mishap. Defendant's motion for directed verdict was denied, as was also his motion for judgment notwithstanding. There was no motion for new trial. Judgment was thereupon entered, and defendant appeals.

Plaintiff is a housewife residing with her husband and family at Shoreham, a summer resort near Detroit Lakes, this state. Her

[1]Reported in 272 N. W. 599.

husband had been trying to teach her to drive a car, and she had been out with him for such purpose some four or five times taking lessons in the art of driving. The husband estimated that she had perhaps driven some 30 to 40 miles under his direction and immediate guidance. She was not only inexperienced but, as we shall show later, wholly inapt in the handling of any automobile. Defendant well knew her limitations in this respect. The parties are near neighbors and long-time, intimate friends.

On the day of the accident defendant had brought to the Blom garage, owned by plaintiff's husband, an old automobile, the luggage carrier of which needed some attention. As Mr. Blom was absent, the desired repair could not be made. A young lady, Betty Nelson, 18 years of age, asked defendant if she could borrow his car for a short ride. While she was away on the ride plaintiff remarked to defendant that she wished she could drive like Betty. When Betty came back with the car defendant strongly and eloquently urged plaintiff to get into it so as to get some practice in driving a car, telling her that she could never learn any younger. His car was defective, in that it had a "grabby" clutch. As such, defendant had found it necessary to set the gasolene throttle on the quadrant or steering wheel down a considerable distance so that when the car was to be put in motion the jerking of the grabby clutch would not stall the engine. When plaintiff got in to drive the engine was running. She managed to get the car in motion and proceeded but a short distance when it began to race. As the car was going up an incline she managed to make the first turn but found that the turn shortly beyond could not be made because of the rapid speed at which the car was traveling. Betty told plaintiff to take her foot off the throttle. Plaintiff testified she never had her foot on the accelerator at all and she knew nothing about the gas feed on the steering wheel. She simply lost her head; the car went over an embankment and finally came to a stop because a roadside tree intervened and prevented its further progress.

Perhaps the best way to describe the situation is to quote from plaintiff's own language, brought out by defendant's counsel on cross-examination:

Q. "When Betty told you to take your foot off of the gas what did you think she meant? What did you think she wanted you to do?

A. "Why, she could tell you—she could tell the car was going too fast and she figured I had my foot on there and I didn't.

Q. "But by taking it off what did you think that meant, that you were going to do what?

A. "Slow up the speed.

Q. "It meant it was going to reduce the gasolene supply, wouldn't it?

A. "Yes, sir.

Q. "And with the throttle on there and that apparatus on this quadrant that you knew was there, and your foot was off of the foot accelerator and you were not [feeding] the engine gas, you didn't think enough to push up that lever or pull it down and stop the supply of gas?

A. "No, I didn't know it was there.

Q. "And when you entered into the car you didn't know how to change its speed?

A. "No, sir.

Q. "And in all this trip you were wholly ignorant of the use or control of the gasolene by that particular hand throttle?

A. "Yes, sir.

Q. "Didn't know anything about that?

A. "No, sir.

Q. "As far as you know it had no such thing on it and it had no control of the supply of gasolene by a hand lever?

A. "No, he never explained anything to me about it.

Q. "And during all this ride and all of the experience you had, the only thing, the only manner in which you felt, or the only knowledge you had about controlling the gasolene was by the foot throttle, is that right?

A. "Yes, sir.

Q. "Now, you yourself had no experience with that clutch in any way to indicate that there was anything wrong with the clutch, had you?

A. "No.

Q. "Nor had you had any information as to whether the brakes were working or were not working?

A. "No, sir.

Q. "And as far as you know never tried the brakes at all after you got into the car? From the time you entered that car at no time had you tried the brakes? ˙

A. "No, there was no time."

The accident took place only about 500 feet from the point where plaintiff embarked upon her experiment. When she got out of the car after the accident she started to walk toward the garage, but before reaching it was met by defendant, who thereupon took the car in hand and somehow managed to get it back on the pavement and brought it back to the garage. Later, when Mr. Blom returned, defendant admitted that he had "put the gas lever down so that she [plaintiff] would have no trouble getting started"; also that "he should have known better than to send her out that way." Defendant gave plaintiff no instructions or warnings. What little experience plaintiff had previously was limited to driving a Pontiac car owned by her husband. This had only the so-called foot feed. Clearly, we think defendant's conduct under the circumstances related was extremely negligent. It is indeed fortunate that the accident did not resolve itself into something much more harmful than it did. The jury awarded plaintiff $250 by its verdict. As to amount it is not criticized by defendant.

Defendant bases his claim for reversal upon two propositions: (1) That plaintiff was a gratuitous bailee, hence defendant's duty was an extremely limited one, and that the record is such as to preclude recovery upon that theory; (2) that plaintiff was guilty of contributory negligence as a matter of law.

■ From the facts recited the jury could well find that plaintiff was an invitee and that as such defendant owed her the duty of exercising due care for her safety. But, assuming defendant's theory respecting bailment is correct, the rule applicable to his duty and consequent liability if such be violated is well stated by the annotator in 61 A. L. R. pp. 1338, 1339. It is this:

"As stated on p. 793 of the original annotation in 12 A. L. R., the rule in gratuitous bailments appears to be that, if the lender of a chattel knows of defects in it, rendering it dangerous for the purpose for which it is ordinarily used, or for which he is aware it is intended, he is bound to communicate information of such defects to the bailee, and if he does not do so, and the bailee is injured because of the defects, the bailor is liable for the injury; but he is not liable for injuries due to defects in the subject-matter of the bailment of which he was not aware."

Applying the facts to the quoted rule, we find no difficulty in sustaining the verdict. Obviously defendant's conduct, in view of his complete knowledge of plaintiff's incapacity as a driver, amounted to a representation on his part that the car was safe for her to operate. We think the duty to inform her of the "grabby" clutch and the manner in which he had fixed the feeding of gas by the hand lever on the steering wheel should have been explained to her. The jury could well find him negligent because of such failure. The car had defects that such inexperienced drivers as plaintiff would not be likely to discover in time to avoid an accident. As a reasonably prudent man, this was something he could and should have foreseen. When he lent his automobile to her he obviously intended "to confer a benefit and not do a mischief." Dickason v. Dickason, 84 Mont. 52, 59, 274 P. 145. Reasonable prudence on his part, in view of the circumstances here appearing, made his conduct a fact question as to whether he exercised the degree of care that the ordinarily prudent person should have exercised under such circumstances.

What has been stated necessarily covers the ground respecting plaintiff's contributory negligence. Nothing can be gained by further discussion. The court fully instructed the jury on all issues deemed pertinent to determination of all fact questions, including that of contributory negligence. At the trial there were no exceptions taken to any ruling, and the charge was such as to be free from any suggestion of error on the part of counsel. In substance and effect there is no dispute respecting the facts.

Judgment affirmed.