SETTLE v. THE ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, *Appellant.*

### Division One, March 12, 1895.

1. **Negligence:** RAILROAD: BOX CARS: DEFECTIVE HANDHOLDS. A railroad is bound to furnish and to keep in repair proper handholds on the ends of its box cars for the use of brakemen, and it is negligence on the part of the company to send out a car, the handhold on which is so bent that it can only be grasped at the ends.

2. ———: ———: PROXIMATE CAUSE. The jury were authorized to infer from the evidence in this case that the defective condition of the handhold was the proximate cause of the death of plaintiff's husband.

3. ———: ———: APPLIANCES FOR USE OF SERVANT. The duty of a railroad company to keep the appliances used by its servants in repair is a continuing one, and a failure to discharge it is negligence, though the servant may continue in the company's service after he has knowledge of the defective condition of an appliance furnished him.

4. ———: ———: ———. While a servant can not wholly ignore a known defect in an instrumentality provided for him, still if it is not so defective as to render immediate danger probable, and can be safely used with care and caution, the servant may use it without subjecting himself to the charge of contributory negligence.

*Appeal from Lawrence Circuit Court.*—HON. W. M. ROBINSON, Judge.

AFFIRMED.

*E. D. Kenna, L. F. Parker* and *H. S. Abbott* for appellant.

(1) There is absolutely no evidence of negligence on the part of defendant, and the court properly so

instructs the jury. *Cotton v. Wood*, 8 C. B. (N. S.) 568; *Bothwell v. Railroad*, 59 Iowa, 192; *Railroad v. State*, 71 Md. 590; *Paris v. Company*, 15 Wall. 524; Wharton on Negligence, sec. 421; *Railroad v. Schertle*, 97 Pa. St. 450; *Baulec v. Railroad*, 59 N. Y. 356. (2) There is no evidence from which it can fairly be inferred that the bent condition of the handhold in any way contributed to the accident which resulted in the death of the plaintiff's husband. *Orth v. Railroad*, 47 Minn. 384; *Hughes v. Railroad*, 91 Ky. 526; *Wintuska's Adm'r v. Railroad*, 20 S. W. Rep. (Ky.) 819; *Mining Company v. Kitts*, 42 Mich. 34; *Railroad v. Allen's Adm'r*, 78 Ala. 494; *Railroad v. Dowell*, 62 Iowa, 629; *Asbach v. Railroad*, 74 Iowa, 248; *Ash v. Verlenden*, 154 Pa. St. 246; *Railroad v. State*, 73 Md. 74; *Perkins v. Railroad*, 103 Mo. 52; *Yarnell v. Railroad*, 113 Mo. 570. (3) The condition of the handhold was obvious, and the accident to plaintiff's husband was one of the risks incident to his employment. *Hathaway v. Railroad*, 51 Mich. 253; *Thomas v. Railroad*, 109 Mo. 187; *Fugler v. Bothe*, 117 Mo. 475; *Williams v. Railroad*, 119 Mo. 316.

*Cloud & Davies* and *T. D. Steele* for respondent.

(1) The condition of the handhold is undisputed and it shows negligence on defendant's part. *Gutridge v. Railroad*, 94 Mo. 474; *Sullivan v. Railroad*, 97 Mo. 113; *Condon v. Railroad*, 78 Mo. 567. (2) The evidence was sufficient to justify the inference that the condition of the handhold was the cause of the injury. *Sœder v. Railroad*, 100 Mo. 673. The presumption exists that deceased was exercising due care. *Flynn v. Railroad*, 78 Mo. 195; *Buesching v. Gas Co.*, 73 Mo. 229. (3) Deceased has the right to assume that defend-

ant would furnish him with reasonably safe machinery. *Parsons v. Railroad*, 94 Mo. 195; *Condon v. Railroad*, 78 Mo. 567; *Abel v. President, etc.*, 128 N. Y. 662; *Railroad v. Triplett*, 15 S. W. Rep. 831; *Lanigan v. Railroad*, 72 Mo. 392.

MACFARLANE, J.—Plaintiff sues, under the provisions of the laws of the state of Kansas, for the death of her husband, William F. Settle, which occurred in said state in January, 1892, while in the employment of defendant as a brakeman.

The petition contains three counts, which do not differ materially in their averments of negligence. The charge of negligence is that the handhold, on the end of one of defendant's cars, which was provided for the use of plaintiff and other brakemen, was permitted "to get out of repair and in dangerous condition, having been mashed in so it could not be readily grasped with the hand, and that by reason thereof, while deceased was performing his duties he lost his hold and fell from the car, and was run over, receiving injuries from which he died." The answer was a general denial.

At the close of the evidence offered by plaintiff, the court directed a verdict for defendant. This verdict the court afterward set aside, on motion of plaintiff, and granted a new trial, and from this order defendant appealed. The only question to determine, therefore, is whether there was evidence of negligence and the resulting death therefrom, which should have been submitted to the jury; if there was, then the new trial was properly granted, if not, then judgment should be entered upon the verdict for defendant.

Plaintiff's husband was rear brakeman on one of defendant's trains, and at the time had charge of switching some cars, the conductor being temporarily

absent.   The work immediately in hand was to take a
car from one track and place it upon another.   This,
deceased undertook to do by making what is known
as a running switch.   To do this it was necessary to
couple the car to the engine and pull it toward the
switch, to uncouple it from the engine and after the
engine had passed to turn the switch and let the car
go in on the side track.   This operation required the
car to be uncoupled from the engine while they were
in rapid motion.

This was a box car and had, on the end and near
the corner, a foothold for brakeman to stand upon.
This was fixed near the bottom of the car.   About
three feet, ten inches above this was a handhold.
These were similarly constructed and consisted of an
iron rod about one inch in diameter, bent at the ends
and fastened to the car with bolts.   The holds were
about eighteen inches long, and, when in proper condi-
tion, stood out from the car two or three inches.   These
holds were used in uncoupling cars while in motion.
On the sides of the car near the end were similar holds,
one above the other, making a ladder by means of
which trainmen could go up and down the car.   The
handhold on the end of this car was bent or mashed
in at the center to within an inch or less of the car,
leaving, however, a sufficient hold of five or six inches
at each end.

Plaintiff's husband undertook to handle the cars
in making this running switch.   The car was coupled
to the engine and was run toward the switch.   De-
ceased, being at the time on top of the car, went down
the ladder, reached round the corner, took hold of the
end handhold, and swung round the corner of the car,
placing his feet upon the footrest at the bottom.
When the proper momentum had been obtained, and
the proper distance from the switch had been reached,

he held with his left hand, standing with his feet on the hold at the bottom of the car, and reached down and drew the coupling pin, thereby uncoupling the car from the engine; the engine was then run forward, leaving the car to follow to the switch. Deceased was seen to assume these positions and make these movements. As soon as the engine pulled away from the car, deceased was seen, in an erect position, hanging to the handhold, his feet having slipped off the hold upon which he was standing. After hanging in that position for a moment his hand gave way and he fell upon the track and the car ran over him, causing his death.

The engineer testified: "I had started ahead and increased the speed of the engine, and got something like thirty feet from the car when I saw him drop down. He sort of dropped a little ways, and then retained himself for an instant, and then went down."

Worthington, telegraph operator, testified: "As they made the flying switch I saw the engine leave the car. I saw him hanging by his hands before his handhold loosened. His feet had slipped from the foothold. He was holding by his hands and held himself there for a moment. * * * I think he held with both hands. * * * He was upright, holding by his hands. His feet were not on the rest at all then."

This was the substance of the evidence as to the manner in which the accident occurred.

Defendant insists that the court properly directed a verdict for defendant, and that the court erred in granting the new trial.

I. The first proposition urged by defendant is that there was no evidence of negligence on the part of defendant, and for that reason the court properly instructed the jury.

This proposition can not be maintained. The handhold was a necessary appliance for performing the service required of deceased under his employment. The duty of defendant required the exercise of reasonable care to furnish a handhold suitable for the purpose, and to keep it in repair. The suitableness and efficiency of this handhold was shown to have been greatly impaired, and its condition was obvious to one making the most casual inspection. The handhold was necessary for the safe and prompt performance of one of the most perilous duties a brakeman is called upon to discharge, and it was a disregard of duty, amounting to negligence on the part of defendant, to send the car out in that defective condition.

II. It is next insisted that the evidence failed to show any causal connection between the bent condition of the handhold and the injury which resulted in the death of plaintiff's husband.

It is undoubtedly true, as insisted by defendant's counsel, that in actions for damages on account of negligence, plaintiff is bound to prove, not only the negligence, but that it was the cause of the damage. This causal connection must be proved by evidence, as a fact, and not be left to mere speculation and conjecture. The rule does not require, however, that there must be direct proof of the fact itself. This would often be impossible. It will be sufficient if the facts proved are of such a nature, and are so connected and related to each other that the conclusion therefrom may be fairly inferred.

The facts proved are that the handhold was bent in the center to such an extent as to prevent the hand from grasping it securely for a space of some six inches, while at each end there was a sufficient hold for one hand. Deceased held up most of his weight with one hand while he leaned over and with the other drew the

pin. He then raised himself to an upright position and immediately his feet slipped from the end of the rod upon which he was standing. He was seen to swing by his hands a moment, and, not being able to sustain himself, fell upon the track. With a firm hold on the rod with both his hands, being a young and active man, we may reasonably infer that he could have regained his footing, or held himself up until the car stopped. Now, from these established facts, it seems to us that the inference might fairly be drawn by a jury that deceased fell because, in the emergency, he was unable to secure a firm hold on the rod by reason of its defective condition. This inference, it is true, is not a necessary one. On the contrary, it might as readily and fairly be inferred from these facts that the slipping of the feet was the sole cause of the fall; that the hold, taken by the hands at the time, was only such as was necessary to sustain a balance while standing, or attempting to get round the car to the side ladder, and not to support the entire weight of the body, and a firmer hold could not have been taken after the support from the feet had given away. But the question we have to deal with here is whether there was evidence from which the jury could reasonably conclude that the bent condition of the handhold was the cause of the injury. This question being ruled affirmatively, the jury should have been left to draw the correct inference from all the facts in evidence.

III. It is said also that the condition of the handhold being obvious, deceased assumed the risk of injury therefrom.

The rule is too well settled in this state to require the citation of the cases, that a person, when he enters the service of another, assumes all the risks and dangers usually incident to the employment in which he

engages. But the rule is equally well settled that the employer is charged with the duty of not subjecting his servants to risks by his own negligence. Under this rule he is required to use ordinary care, not only in providing sound and secure instrumentalities which they are required to employ in their work, but of keeping them in such condition. This is a continuing duty of the master, and a neglect of it is negligence. On entering the employment the servant does not assume the risk of dangers arising from its neglect.

These general propositions we do not understand defendant to deny, but it is claimed that though the duty to repair defects is neglected by the master, if the servant is advised of it, and thereafter elects to continue in the service, and to use the defective means, he thereby assumes the risk of injury therefrom. The rule thus invoked would relieve the master of his duty as soon as the servant became aware of its violation. Such is not the law in this state. The duty to repair is a continuing one, and a failure to discharge it is negligence, though the servant may continue in the service after knowledge thereof. An express contract will not relieve him. *Blanton v. Dold*, 109 Mo. 75.

The question has often been raised, discussed and decided, whether a servant can recover for injuries incurred in the use of machinery or appliances known by him to be defective. The nonliability of the master in such cases, however, is properly placed upon the ground of contributory negligence rather than that of assumption of risk. *Gibson v. Railroad*, 46 Mo. 163; *Huhn v. Railroad*, 92 Mo. 447, and cases cited; *Soeder v. Railroad*, 100 Mo. 681; *Blanton v. Dold, supra.*

"Where the instrumentality with which the servant is required to perform service is so glaringly defective that a man of common prudence would not

use it, the master could not be held responsible for it.'' *Huhn v. Railroad, supra.*

''If the instrumentality by which he is required to perform his service, is so obviously and immediately dangerous, that a man of common prudence would refuse to use it, the master can not be held liable for the resulting damage. In such case the law adjudges the servant guilty of concurrent negligence.'' *Patterson v. Railroad,* 76 Pa. St. 389.

''There may be cases where a servant would be wanting in due care by incurring the risk of injury in the use of defective or imperfect machinery or apparatus, after he knew it might cause him bodily harm.'' *Snow v. Railroad,* 8 Allen, 441.

The question is one of contributory negligence which should be submitted to the jury unless the defect is so manifestly and glaringly hazardous that the court could declare, as a matter of law, that a person of ordinary prudence would not use it. A servant could not wholly ignore a known defect in the instrumentality provided for him, but would be required to exercise care and caution in its use. The degree of care would depend upon the nature of the defect, and the character of the use made of the instrumentality.

Under ordinary circumstances the handhold, in its defective condition, by exercising care, could have been used for the purposes for which it was designed. It was not so dangerous as to threaten immediate injury by its use, and deceased was not guilty of contributory negligence in using it, though he had knowledge of its defects. *Soeder v. Railroad, supra.*

Neither do we think deceased guilty of negligence in law in the manner in which he used the handhold on this occasion. The slipping of his feet created a sudden and unexpected emergency, for which he was not prepared, and we can not say, in the circumstances,

that a failure to grasp the hold at the proper place was negligence. It was a question for the jury. The order granting a new trial is affirmed. All concur.