FRY v. SEARS, ROEBUCK & CO.

1. SALES—IMPLIED WARRANTY—HOT WATER HEATING SYSTEM.

Obligation of one who furnished a hot water heating system for gasoline filling station located some distance from house in which heater was placed was to furnish such a system as would not only keep running but start safely under ordinary use, where buyer expressed ignorance of heating systems and relied on defendant to furnish a proper one (2 Comp. Laws 1929, § 9454).

2. SAME—EXPANSION TANK — ICE — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE.

In suit for damages resulting from explosion of hot water heater a few hours after fire had been started therein after a period of a few days in November in which no fire had been in it, questions of negligence of seller in knowingly installing expansion tank in exposed place and contributory negligence of buyer in failing to anticipate ice in the system *held*, questions of fact for jury under record presented.

POTTER, C. J., and WIEST, J., dissenting.

Appeal from Genesee; Black (Edward D.), J. Submitted January 18, 1935. (Docket No. 154, Calendar No. 38,155.) Decided May 17, 1935. Rehearing denied June 19, 1935.

Case by Joseph F. Fry against Sears, Roebuck & Company, a foreign corporation, for damages for breach of an implied warranty in installation of a heating system. Set-off by defendant for sums due on heating system. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Myron Winegarden,* for plaintiff.

*Carton & Gault* and *Matthew Davison, Jr.,* for defendant.

Fead, J.   In 1930, plaintiff negotiated with defendant for a heating apparatus for his home and his gasoline station 70 feet away, informing defendant of his wants, his ignorance of heating systems and his reliance on defendant to furnish a proper one. The station was of stucco construction, contained a large oil room and two toilets, with solid ceiling, and an attic. Defendant installed steam heat in the home and a separate hot water system for the station. The hot water heater was put in the basement of the house and the water piped, below the frost line, to radiators in the station. Heat causes the water to circulate and, of course, to expand.

In January, 1931, and also in March, expansion of the water from heating caused a radiator to blow out. Defendant repaired it and finally, to provide for expansion, installed a tank in the attic of the station. The system worked well until November, 1933, when the heater in the basement exploded and. caused considerable damage.

The action is to recover for the damage, upon the grounds of breach of implied warranty that the system should be reasonably fit for its purpose, 2 Comp. Laws 1929, § 9454, and for negligence in installation. The only defect or negligence claimed, sufficiently supported by testimony to justify discussion, was that the tank should not have been placed in the attic where the water was more likely to freeze than in the room. Plaintiff had verdict of a jury and judgment. Defendant contends its motion for judgment notwithstanding verdict should have been granted.

There was undisputed testimony that defendant's agent, at the time he inspected the premises shortly after the explosion, told plaintiff's wife he thought the explosion was caused from the expansion tank and that the tank should not have been located in the

attic. The only expert opinion of the cause was that the water in the tank had frozen, thereby closing the outlet for expansion and casting the pressure back on the heater.

The explosion occurred from one to five hours after plaintiff had started a fire in the heater. There had been no heat in the system for two or three days. There was testimony that the weather had been cold. Plaintiff, however, said there had not been any freezing weather "to amount to anything" before the day of the explosion and while, on that day, the weather had gotten colder and finally reached a temperature of five degrees above zero in the evening, it was not freezing when he started the fire; that he had flowers in the oil station and they were not frosted.

Counsel discuss the location of the tank as a matter of negligence of installation and we will so treat it.

The obligation of defendant was to furnish a system which would not only keep running but which would start safely under ordinary use. It was bound to anticipate that the fire would be out in warm weather, would be started when it got cold, and that people determine the time for a fire from the conditions about them. If, then, defendant put the tank in a place where the water was more likely to freeze than would be indicated by conditions surrounding plaintiff, knowing or having reason to anticipate danger therefrom, it would be guilty of negligence. The statement of defendant's agent to plaintiff's wife would carry the question of defendant's knowledge of the hazard to the jury.

If plaintiff had known the water was frozen, a different question would be here. He did not know it. Whether he should have anticipated ice in the system depends upon the weather. Thermometer

readings were not furnished. The conflict in the testimony leaves it uncertain whether a prudent person would have thought the tank might be frozen.

The case presents issues of fact on both negligence and contributory negligence.

Affirmed, with costs.

NELSON SHARPE, NORTH, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred with FEAD, J.

WIEST, J. (*dissenting*). I find no evidence of breach of implied warranty in this case.

Assuming that freezing of the expansion tank caused the explosion of the coal heater (an assumption the master plumber, called by plaintiff to install repairs and to testify, would not indulge), was such freezing a breach?

The master plumber, called by plaintiff, testified:

"*Q*. Mr. Henry, from your experience with plumbing and heating apparatus, from your examination of this situation as it is here, or was at that time, and the system as you know it to exist, did you draw any conclusions as to the cause of that explosion?

"*A*. No.

"*Q*. You didn't?

"*A*. No. I could not draw any conclusions. The only thing, we provide a safety on these heaters so there is no possible chance of any danger in any way. Such a safety wasn't on this heater. There was no safety valve, except just running back to the expansion tank. There is a possible chance of the expansion tank being frosted over and the pressure generated in your heater. * * *

"The only thing that can go wrong with the expansion tank is that it might freeze up. It could be left a period of time in the station without any heat on, depending upon this coal heater, and if it froze

up, naturally there would be no place for the excess heat to go. A safety valve would take care of that.
\* \* \*

"*Q.* What do you think happened to cause this explosion?

"*A.* I don't know.

"*Q.* You have no idea?

"*A.* No. \* \* \*

"*Q.* Now, given a situation where there has been no fire for a couple of days in the hot water heater, atmospheric conditions five degrees above zero, would that be cold enough to freeze up that system?

"*A.* Absolutely. \* \* \*

"*Q.* Well, if this system had frozen solid, if there had been a safety valve on the heater, would this explosion have occurred?

"*A.* A safety would have protected the residence."

Subsequent installation of a safety vent on the heater was but an additional precaution and it was not at all subject to call for service in conjunction with the expansion tank. If the expansion tank froze it was while the hot water heating plant was left out of service during extremely cold weather, and this was the fault of plaintiff and not of the heating system.

Until the cause of the explosion is ascertained and traced to breach of implied warranty of suitable equipment and proper installation there can be no recovery.

The rule, *res ipsa loquitur,* is without operation in this jurisdiction.

The judgment should be reversed, with costs to defendant, and without a new trial.

POTTER, C. J., concurred with WIEST, J. BUTZEL, J., did not sit.