FRANK LEWIS, Appellee, v. LELAND CRATTY et al., Appellants.

No. 45920.

JUNE 16, 1942.

Betty, Betty & Neuman and McNett, Kuhns, McNett & Aiken, for appellants.

Newton W. Roberts and Wilbur Dull, for appellee.

MILLER, J.—Plaintiff's petition asserts that on July 12, 1940, plaintiff purchased from the defendants a grain combine or har-

vester-thresher; it was delivered knocked down and was assembled on plaintiff's premises by some of the defendants; plaintiff was unfamiliar with this type of machine and its operation; while plaintiff was operating the machine his right shoe and foot were caught in the whirling power drive, causing serious injury; that defendants were negligent in manufacturing the combine without proper guard for the power drive, in selling it without such guard, in failing to warn plaintiff of the absence of same when defendants knew or should have known plaintiff was unfamiliar with the machine and when defendants knew or should have known that it was dangerous; that the negligence of defendants was the proximate cause of plaintiff's injuries and plaintiff was free from any negligence on his part contributing thereto. The prayer was for damages in the sum of $10,000.

Defendants' answer admitted the sale of the machine to plaintiff and the assembling of it on his farm, but denied all other allegations of the petition, and further asserted that plaintiff was an experienced farmer, familiar with farm machinery, with knowledge of the machine involved herein, fully aware of any danger involved in the operation of the machine and in the condition existing at the time of his injury and, having full knowledge of the dangers involved, he assumed the risk incident thereto. The prayer was that the action be dismissed.

The cause was tried to a jury. At the close of the evidence, defendants made a motion for a directed verdict. It was overruled. The jury returned a verdict for plaintiff for $5,425. Motion for new trial and exceptions to the instructions were filed. The court determined that the verdict was excessive but gave plaintiff "the option to file remittitur of all of said verdict in excess of $3,000." Such a remittitur was filed by plaintiff. Judgment was entered accordingly. Defendants appeal to this court.

The type of combine sold to plaintiff had a shield or guard over the power shaft. The evidence is in conflict as to the reason for the omission of this shield, as well as the matter of oral warnings which defendants testified were given to plaintiff and which are denied by plaintiff and members of his family. Of course, we must view the evidence in the light most favorable to the plaintiff in considering defendants' contentions here that the court should have sustained their motion for a directed verdict.

However, the evidence of the plaintiff himself would seem to fully present the facts bearing on such questions.

On direct examination, plaintiff testified as follows:

"After they got the power shaft or power hitch attached to the tractor the mechanic had the tractor running and Mr. Cratty moved the levers necessary to throw the combine into operation in a standing position and let it run to let the canvases and all that part work. At the time and place I observed the power shaft or power hitch because I helped lift it up and hold it in position while they backed up to it. * * * As I observed how the combine and the power shafts operated at that time it was whirling and you could see that. * * * There was no guard or shield on the power hitch at the time of this demonstration. * * * I watched Jim Acton assemble the combine. * * * I was present there all the time on July 12. I helped put some pieces of wooden slats on the reel. * * *

"Neither on July 13 or any day before had Mr. Acton or Mr. Stagers or Mr. Cratty or any one told me that there should be a guard or shield over the power hitch parts or the parts that they were then assembling. None of them had ever told me that I shouldn't use the combine as it was then assembled without a shield or guard over the power hitch parts. None of them had told me that there was a guard made for that machine and provided but it wasn't there that day. At that time I did not know there was a guard of my own knowledge at all for that part of the combine and the tractor. * * *

"I had seen a combine operate before the 6th day of July, 1940. Prior to the purchase of this power driven combine, I had never used or owned a power driven combine or power driven machinery of any description. * * * Before we started to cut these oats nor at any time previous to that had Clair Stagers, Jim Acton or Leland Cratty or anyone told me there should be a guard or shield over the power hitch parts. There was none over it when we started around there cutting oats. * * * To take the combine out of gear you pull a lever right behind you. The lever is shown in Exhibit P-1. It takes the combine out of gear. However when I pulled the combine out of gear the power shaft was still running. * * *

"When the oats were emptied from the hopper I pushed the spout up into position and went to get on the tractor to continue the work. The boy crawled onto the wagon and took hold of the lines. I walked up and put my hand on the side ready to step up onto the axle of the tractor where I had been getting on at and which is the only place you can get on the tractor and which is the regular place I got on and all at once like a bull-dog it hit me, grabbed my pants in there and it terrified me. I tried to jerk loose but there wasn't any chance. It just jerked me away from the tractor and throwed me over the shaft. * * * It was the right leg that was caught first. It done me no damage on my left leg but it had this pant leg also by the time it was through. My pant leg was clear gone. I was pulled over against the shaft on my back. The engine on the tractor stopped. It tore my shoe loose and tore my clothes off the right leg. * * *

"There was no guard or shield over the power shaft or drive shaft of my combine at the time of the accident. * * * Prior to the accident, I had observed the power shaft Exhibits P-6 and P-7 while they were in operation—were turning. When turning it is round similar to a round pipe. It doesn't show up square. It all blends itself into a straight round object or pipe. When Exhibit P-6 and Exhibit P-7 is operating on my tractor at the speed it was in operation at the time of the accident I cannot see the knuckle and bolt at the end of Exhibit P-6; you wouldn't know exactly what it was if you just walked up and looked at it; nothing there you could tell except kind of a blur. Before I stepped over there to empty the oats that morning the tractor was running fast—practically full speed.

"The distance between the left wheel of the John Deere tractor and the power shaft was twenty-one and a half inches. I measured it."

On cross-examination plaintiff testified as follows:

"On the farm I had a gang plow and a sulky plow, a sulky rake and mowing machine, a cultivator, a disc, a harrow, a corn planter and I had a binder. For nine months before the injury I had owned and had a tractor and before that I had a Fordson. I used the Fordson for two seasons to pull the plow and the disc. * * * The mowing machine had one sickle five feet long which

travels back and forth. It is on guards and if grass or hay gets between the guards it cuts it off. What I call guards are prongs that come out. These prongs just go between the hay and part it and the blade cuts it off. I used the tractor in pulling the mowing machine once. There were cogs and a shaft but no chain. The cogs were in the housing inside. * * *

"This combine was really an up-to-date threshing machine. As you operated it in the field, it cut the grain, it took the grain in and threshed it and threw out the straw and deposited the grain in a hopper as you went along there cutting the grain. Prior to that the ordinary way that we farmers would get our grain threshed would be by cutting the grain and binding it and then hauling it to the threshing machine and threshing it. * * * It has a power drive and a power shaft. It also had a draw bar underneath with which they attached the combine to the tractor so the tractor could pull it. At those times I noticed the shaft whirling there and they were operating it at my place the two times during 1939. I could see the shaft turning. I saw the power shaft turning. There wasn't any shield or cover over the shaft. * * * Q. And, of course, you had operated one at Adamson's and also observed at other places a combine in operation? A. Yes. * * *

"In mounting the tractor you don't mount it from the front —you don't have room. You have to mount the tractor from the rear. It can be mounted from either the left or the right but with the combine I would mount it from the left. With the combine attached I invariably mounted the tractor from the left. In mounting the tractor I would put my right hand on the seat and my foot on the axle. * * * Q. Now, why didn't you step on the cross piece when—on the edge of it—when you were getting up? A. Well, I am pretty long-legged for one thing. Q. Well, that wasn't as high as the axle? A. No. Q. Then why didn't you step up there when you went to mount the tractor? A. There is an extra step there and a waste of time, for one thing. Q. An extra step and a waste of time? That was closer to the revolving shaft than the axle, was it not? A. Yes. Q. Did you consider it as safe to step up that way as you did to go by way of the axle? A. No. Q. Why not? A. Because this

whirling device was too close. Q. So as a precaution and as the safest way you invariably stepped on the axle? A. Yes. * * *

"Time after time as I went toward the tractor and up to the seat I could see that power shaft whether it was moving or still if I looked down at it. There was nothing in the way to interfere with my vision of it. * * * It was a new McCormick-Deering combine that I purchased. I observed on the side of the frame of this combine the printed lettering directing me to be cautious. At the top of this lettering was a green cross in a circle, underneath that were the words, 'Safety first', underneath that were the words 'Keep clothing and hands from chain and moving parts,' and underneath that it said to stop machine to oil and adjust. As to whether or not it was very plain and apparent if you get close enough, you could read it. I read this sign. I wouldn't say it was not on both sides but I think it was on only the one side. * * * Q. And, of course, this power shaft and hitch part, you knew as they whirled there that that was dangerous too? A. I knew there was some danger there."

Other testimony might be set forth, of course. The testimony comprises approximately 120 pages of the abstract. The foregoing, however, would seem to be conclusive against plaintiff and to require a reversal herein.

Defendants' motion for directed verdict was sought "for the reason that the danger from the power shaft while rapidly revolving was visible and apparent to plaintiff, and that he knew or should have known his danger in coming in contact therewith; and for the further reason that the plaintiff was warned by printed instructions on the combine to keep clothing and hands from chains and moving parts thereof. * * * the plaintiff's evidence shows that plaintiff knew of the danger of the power shaft in operation before and at the time of the injury, and failed to exercise ordinary care in avoiding contact therewith while it was rapidly revolving, and thereby contributed to the negligence causing the injury. * * * the plaintiff's evidence shows that plaintiff knew or should have known the dangerous character of the power shaft in motion at the time of the injury and prior thereto, and therefore assumed the risks incident thereto." Defendants assert that the court erred in overruling such motion. We agree that the ruling was erroneous.

Plaintiff relies upon our holding in Larrabee v. Des Moines Tent & Awning Co., 189 Iowa 319, 322, 178 N. W. 373, 374, wherein we state:

"If the thing sold or constructed be not imminently dangerous to human life, but may become such by reason of some concealed defect, then a liability may arise against such vendor or constructor, if he knew of the defect and fraudulently concealed it. The liability in such case is predicated upon deceit."

The rule above stated, and the other authorities cited by plaintiff to sustain it, including Dillehay v. Minor, 188 Iowa 37, 175 N. W. 838, 11 A.L.R. 106; Mitchell v. Heaton, 231 Iowa 269, 1 N. W. 2d 284, 138 A.L.R. 832; Huset v. J. I. Case Threshing Mach. Co., 8 Cir., Minn., 120 F. 865, 61 L.R.A. 303; Peaslee-Gaulbert Co. v. McMath's Admr., 148 Ky. 265, 146 S. W. 770, 39 L.R.A., N.S., 465, Ann. Cas. 1913E, 392; II Restatement of the Law of Torts (Negligence) 1044, 1045, 1047; 20 R. C. L. 15, have no application under the record herein. Plaintiff's own testimony, above set forth, clearly demonstrates that he was not deceived by defendants. He saw the power shaft revolving, knew that it was dangerous, read defendants' warning to keep his clothing away from moving parts, and on prior occasions when he had mounted the tractor he had been careful to avoid contact with the moving power shaft, which he knew was dangerous.

In Davis v. Sanderman, 225 Iowa 1001, 1005, 282 N. W. 717, 719, we state:

"As we read the record, defendant was under no obligation to warn of alleged dangers, because there were none latent and none that were not as apparent to plaintiff as they were to defendant, * * *."

In the case of Trainor v. Maine & Co., 184 Iowa 549, 552, 168 N. W. 872, 873, we state:

"Manifestly, it cannot be practicable to keep all openings covered or guarded against the dangers of inadvertence. There was nothing concealed about the opening involved herein. There was no hidden defect. * * * The opening was 6 feet and 9 inches. The plaintiff stood in plain view of it for an appreciable

time, and inadvertently stepped 'sideways and backwards' into it. It cannot be said otherwise than that the plaintiff knew of the opening. There was, therefore, no occasion of warning."

A case which would seem to be directly in point is that of Stevens v. Allis-Chalmers Mfg. Co., 151 Kan. 638, 644, 100 P. 2d 723, 727, wherein plaintiff recovered judgment for personal injuries received under circumstances directly analogous to those shown by the record herein. On appeal, the cause was reversed with instructions to enter judgment for defendant. The court states:

"Plaintiff alleged that he was unfamiliar with such an apparatus as a universal joint. But it was shown—indeed, by his own testimony—that he was a farmer of many years' experience; he had owned and operated several tractors; he had owned and commercially operated a threshing outfit for a number of years and he did whatever needed to be done around the separator and the engine. All these machines had exposed cogwheels, chains, belts, moving and driving shafts. It seems clear that a farmer of such varied and extensive experience must be accredited with sufficient intelligence to know that a whirling shaft with an exposed universal joint was dangerous and to be avoided by the exercise of the simplest elements of prudence."

Under the record herein, plaintiff's knowledge is not imputed from his past experience with other machinery, but is admitted by his own testimony regarding the very piece of machinery which produced his injury.

Plaintiff cites our recent case of Lang v. Hedrick, 229 Iowa 766, 775, 295 N. W. 107, 112. The case is not in point. We state:

"The defense of contributory negligence, pleaded by the defendant, could not defeat the plaintiff's action, since it was not a complete defense, but may be pleaded only in mitigation of damages. Code section 11210. Bell v. Brown, supra; Oestereich v. Leslie, supra; Potier v. Winifred Coal Co., 192 Iowa 1280, 184 N. W. 739; Hunt v. Des Moines City Ry., 188 Iowa 1068, 177 N. W. 48."

The rule above stated applies in master and servant cases. It has no application herein.

In Norris v. Cudahy Packing Co., 124 Iowa 748, 751, 100 N. W. 853, 854, relied upon by plaintiff, we state:

"That an obstruction presents difficulty or even danger is not conclusive in respect of the question of reasonable care. If plaintiff, although she had knowledge of the earth pile, believed that she could pass over the same in safety, by exercising proper care, and she had a right, as a reasonably prudent person, so to believe, then a finding that she was without negligence should be upheld. The principle involved is that which governs in cases of accident and injury occasioned by sidewalk defects. Kendall v. Albia, 73 Iowa, 241; Nichols v. Laurens, 96 Iowa, 388; Sachra v. Manilla, 120 Iowa, 562."

Plaintiff's testimony does not bring him within the rule above stated. He knew the revolving shaft was dangerous and should be avoided. He took care to avoid it on all prior occasions when he mounted the tractor. His failure to do so on the occasion now complained of constituted negligence. The court should have held, as a matter of law, that plaintiff failed to prove his freedom from contributory negligence.

This is not a case where a part of the machinery was defective and collapsed as in MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, L.R.A. 1916F, 696, Ann. Cas. 1916C, 440; Pierce v. Bidwell Thresher Co., 153 Mich. 323, 116 N. W. 1104; Heckel v. Ford Motor Co., 101 N. J. L. 385, 128 A. 242, 39 A. L. R. 989. It is not a case of active misfeasance by defendants as in O'Meara v. Green Const. Co., 225 Iowa 1365, 282 N. W. 735; Fry v. Sears, Roebuck & Co., 271 Mich. 469, 260 N. W. 906; Miller v. International Harv. Co., 193 App. Div. 258, 184 N. Y. S. 91. It is not a case of total absence of warning or appreciation of the danger involved as in the case of Karsteadt v. Phillip Gross Hdw. & Sup. Co., 179 Wis. 110, 190 N. W. 844. It is a case where the danger was obvious and was known and appreciated.

Many other authorities are cited by defendants in support of their contentions, including our own decisions in the cases of Boles v. Hotel Maytag Co., 218 Iowa 306, 253 N. W. 515; Snyder

v. Heuer, 184 Iowa 538, 168 N. W. 878; Hittle v. Jones, 217 Iowa 598, 250 N. W. 689; Abraham v. Sioux City, 218 Iowa 1068, 250 N. W. 461; Wilson v. Goodrich, 218 Iowa 462, 252 N. W. 142; Perkins v. Schmit Const. Co., 215 Iowa 350, 245 N. W. 343; Dreier v. McDermott, 157 Iowa 726, 141 N. W. 315, 50 L.R.A., N.S., 566; Van Gorden v. City of Fort Dodge, 216 Iowa 209, 245 N. W. 736; Gowing v. Henry Field Co., 225 Iowa 729, 281 N. W. 281; Oaks v. Chicago, R. I. & P. R. Co., 174 Iowa 648, 156 N. W. 740; Sohl v. Chicago, R. I. & P. R. Co., 183 Iowa 616, 167 N. W. 529; Wasson v. Illinois Cent. R. Co., 203 Iowa 705, 213 N. W. 388; Tegtmeyer v. Byram, 204 Iowa 1169, 216 N. W. 613; Brown v. McAdoo, 195 Iowa 286, 188 N. W. 7; Zuck v. Larson, 222 Iowa 842, 270 N. W. 384; Parrack v. McGaffey, 217 Iowa 368, 251 N. W. 871. These decisions support our holding herein. It is not necessary to discuss them in detail.

Since plaintiff failed to prove his freedom from contributory negligence, the defendants' motion for a directed verdict should have been sustained. It was error to overrule it. Other questions, referred to in the briefs, need not be discussed or decided.

The judgment is reversed.—Reversed.

All JUSTICES concur.