EARL MOYERS et ux., appellees, v. SEARS-ROEBUCK & COMPANY et al., appellants.

No. 47789.

(Reported in 48 N.W.2d 881)

1040

Clark, Pryor, Hale, Plock & Riley, of Burlington, for appellants.

Hirsch, Riepe & Wright, of Burlington, Hicklin & Hicklin, of Wapello, and Tomasek & Vogel, of Grinnell, for appellees.

Mᴀɴᴛᴢ, J.—Plaintiffs brought suit against Sears-Roebuck & Company and Al High, claiming damages for loss by fire of their home and contents, alleging that such damage was caused by the negligent acts of the defendants in the sale and installation of a furnace in said home, and that said furnace when sold and installed was not the proper design and as such was a dangerous instrumentality and that its operation caused a fire which destroyed plaintiffs' home and contents. All of said negligent acts were denied by both defendants. The cause was submitted to the jury and verdict was rendered against Sears-Roebuck & Company. Motions to set aside the verdict and for a new trial were overruled. Defendant appeals.

The verdict and judgment being solely against the defendant, Sears-Roebuck & Company, such company in this opinion will be designated as defendant, or appellant, and any reference to High will relate to matters arising before the appeal.

I. We will briefly summarize the charges of negligence which the plaintiffs urged against the defendants in the installation of the furnace : a lack of adequate clearance between the top of the furnace and the basement ceiling ; failure to use top insula-

tion to protect the wood above; installing an electrically powered blower, not automatic in operation, causing it to be unsafe, dangerous and hazardous; failure to install safety controls, sometimes known as limit controls; failure to inspect the furnace when installed to ascertain whether it was operating in a safe and satisfactory manner; failure to correct faults of the system after complaints had been made; installing a defective blower and placing air filters in the blower pipe.

Plaintiffs allege that these negligent acts were the proximate cause of their damages and that they did not contribute thereto by any want of care upon their part. Both defendants generally and specifically denied such charges and alleged that the furnace sold and installed did not cause the fire. The court refused to strike certain allegations of negligence and dealt with them in its instructions to the jury.

When plaintiffs rested, the defendants moved for a directed verdict. When all the evidence was in, the same motion was made. Both were based upon the claim that there was no evidence in the record that the fire which destroyed the house and contents was caused by the furnace. Both motions were overruled as was a later motion for judgment notwithstanding the verdict.

Following the above ruling, the cause was submitted to the jury and a verdict was returned against defendant Sears-Roebuck & Company.

II. The above rulings of the court are the first error urged.

In considering this claim of error the rule that the evidence is to be considered in the most favorable light in behalf of plaintiffs applies.

After an examination of the record we hold that the ruling of the court was not error.

We will briefly summarize from the record the evidence which we think sustains the ruling of the trial court.

Sometime in March or April 1947 plaintiffs purchased from appellant a hot-air furnace which was later installed in their farm home. Plaintiffs made two trips to appellant's store in Burlington to examine and purchase a furnace to be used in their home some twenty-three miles distant. On both occasions they discussed the prospective purchase with one Stanley, the salesman in charge of

the heating department of appellant's store. On the first trip the kinds and types of hot-air furnaces were discussed but no definite conclusion was reached. A few days later Stanley called at the Moyers home. Mr. Moyers was absent, but Stanley looked over the house and the various rooms—he discussed the matter to some extent with Mrs. Moyers. A few days later Earl Moyers again went to appellant's store and contacted Stanley. Various types of hot-air furnace were there on display. Stanley showed several of them to Moyers and they discussed in some detail the type of furnace which Stanley suggested as being advisable in the Moyers home. He advised one of a forced-air type with fan or blower attachment. At that time Stanley introduced Moyers to defendant Al High as being one who had installed many furnaces for appellant. High was a stranger to Moyers. Stanley suggested that the following day, Sunday, Stanley and High go to the Moyers home and there look over the situation and discuss various matters—location of the furnace, registers, prices etc. Pursuant to arrangement, Stanley and High came to the Moyers home. Stanley and Moyers further discussed the matter, High taking little part therein. After some figuring and discussion Moyers decided on the forced-air hot-air furnace. In appellant's catalog (Exhibit 12) this type is called the "Homart". Stanley stated that for $530 the appellant would install the furnace in the Moyers home. He made estimates and measurements and gave directions as to where to set the furnace, the necessity for lowering the floor and of building a base upon which the furnace would rest; the necessary hot-air pipes, cold-air ducts and their various connections and directions for the installation. Stanley made a sort of blue print to govern the installation. This was given to High. At Stanley's request, Moyers gave him a check for $250 as down payment. At that time Stanley prepared an order for Moyers' signature, its date notation being as follows: "Date 4—47." This was also signed by High who was to make the installation. This order to be effective had to be signed by one Wilson, manager of appellant's store at Burlington. Moyers had nothing to do with the installation and testified that he had no special knowledge of furnaces and that he relied upon the assurance given him by Stanley that the one to be installed would be of proper design

and construction. In June, High, with a helper, installed the furnace following the design and directions given by Stanley. Moyers lowered the basement floor to make the required base. When set by High the furnace had a top clearance of between four and five inches to the joists of white pine supporting a soft pine floor, upon which rested oak flooring. When installed it had a blower fan electrically operated from the circuit used in the home; also it had air filters connected with the blower. No limit heat control was put on the furnace when it was installed. High requested Moyers to sign a "letter of satisfaction", which stated that the furnace was installed and was entirely satisfactory. This was dated "4-14-47." At that time no fire had been built in the furnace and no test made. High stated that he would have to have Moyers' signature so that he would get his pay from appellant. There was no inspection of the job when completed.

In this connection it might be mentioned that appellant denied any liability for anything after the sale and the installation by High. It made this point in its motion for a new trial. In disposing of this contention the trial court in ruling on the motion for a new trial stated:

"The finding could be made that High had nothing whatever to do with some of these factors. He testified that he had nothing to do with the plans; Stanley prepared them, and he put in the furnace and all of the equipment as instructed by Stanley. Under this record the jury could find that defendant Sears-Roebuck & Company alone recommended the system, determined the parts thereof, and directed and controlled the entire installation. Under such a record the weight of the testimony was for the jury to determine."

In October 1947 plaintiffs began to use the furnace, using coal for fuel. They noticed that it seemed to overheat and to such an extent that the floor above gave off an odor of heated wood; the floor became warm, the floor boards showed signs of shrinking and heat could be felt through the boards. Moyers testified that on two occasions he reported to appellant that the furnace was overheating, that he did not think it was working properly and that it was not safe. Moyers asked if insulation should not be

placed on the top of the furnace to prevent the joists and floor from becoming ignited, but Stanley advised him that it was not necessary. The evidence shows that on December 22, 1947, Moyers reported to Stanley that the furnace was overheating and specifically inquired if a limit control should be installed to prevent such overheating; Stanley advised against it saying that with such attached the furnace would not heat the house. The evidence shows that the blower bearing became noisy and rattled and required frequent oiling and that such condition continued. Appellant did nothing in regard to the complaints Moyers was making as to the operation of the furnace. On one occasion Moyers was advised to contact the service department but he was unable to get any satisfaction therefrom. On January 1, 1948, there was a sleet storm which caused the electric power to fail for eighteen hours. Lights went off and the blower did not operate. Shortly the family smelled the odor of hot wood. The damper was found open and the check was closed. Ashes were thrown on the fire to keep it from getting too hot. During the eighteen hours plaintiffs could not use the furnace as it got too hot.

On January 23, 1948, plaintiffs were in Chicago. Their son, a student from college, was home looking after it in their absence. The weather was quite cold—below zero part of the time. He checked the furnace at noon; also about 4 p.m., adding to the fuel with the usual quantity, and left about 6 p.m. At that time there was no fire save in the furnace. He did not touch the draft or thermostat. Korn, a hired man, lived in a tenant house about thirty feet from the Moyers home. The electric current in the tenant home was on the Moyers circuit. About 7:30 p.m. the lights went off. Korn immediately investigated and observed smoke coming from the Moyers home—he saw no blaze. Smoke prevented him from getting into the Moyers home to reach the telephone. He at once ran to the home of a neighbor, Robert Campbell, and gave the alarm; they returned in about fifteen minutes and in looking in a basement window saw the joists above the furnace on fire; that was the only fire to be seen. Shortly after the fire spread and the entire house and contents were burned. Plaintiff went to appellant's store and talked over his loss but appellant disclaimed liability.

While there is some dispute in the facts, we believe that the jury could find the above as established.

In argument, concerning the above claim of error, appellant stated that plaintiffs' claim as to liability had no basis save that of clear conjecture and speculation as to what caused the fire. Appellant argues that the fire could have originated from causes beyond any control of appellant — spontaneous combustion, matches or defective wiring. Under the record these would have been speculative. The son testified that when he left about 6 p.m. there were no matches in the basement, the furnace seemed to be acting properly, and there was no fire save in the furnace. But less than two hours later there was a fire in the basement and directly over the furnace. When first viewed by witness, Campbell, the large joists directly over the furnace and the floor immediately above were on fire. It could readily be inferred from the size, location and nature of the joists that it would require an extremely hot fire to ignite them.

The major controversy centers around the question—What caused the fire? Under the record this was a question of fact and we are not prepared to say that under the record the trial court erred in submitting the question to the jury.

Much of the controversy centers around the evidence given by an expert witness for plaintiffs, Professor Stoever, of Iowa State College. At that time he was a professor of mechanical engineering at Iowa State College. He is a licensed professional engineer of Iowa. He has practiced in the field of engineering since 1930. At Illinois University he spent four years in research work in connection with heating, fire hazards, and proper furnace designs. His qualifications are not questioned. He testified at length regarding types of residence furnaces, faulty installations and the hazards incident thereto.

In answer to a hypothetical question propounded by plaintiff he gave his opinion that the furnace as installed was of faulty design; that assuming the facts as set forth in the question as true it was his opinion that the failure of the electrically powered blower caused the furnace to overheat and caused the resulting fire. We quote an excerpt from his answer that he thought the furnace as installed was unsafe: "Now, to have that system be

safe when the fan is able to operate, I think it is a very dangerous thing and it can be safe only if the fan is able to operate * * *."

██ ██ Appellant's specific objection to the hypothetical question is that it assumed factors not shown in the evidence. It was argued that as the furnace was operating normally a few hours before the fire, it was mere conjecture and speculation to state that the failure of the fan caused the fire. We do not agree with appellant that the hypothetical question is vulnerable to the objection which was lodged against it. It must be kept in mind that Stoever was an expert witness and as such, under our many holdings, was allowed to give an opinion based upon inferences arising from shown facts. In the recent case of Grismore v. Consolidated Products Co., 232 Iowa 328, 5 N.W.2d 646, that matter was before this court. In that case Justice Bliss dealt at length with the subject of expert witnesses and when and under what circumstances they could give an opinion as to cause and effect. While the specific objection urged in that case was that the opinion of the witness was invading the province of the jury, yet the whole broad field of when and under what circumstances the opinions of experts may properly be given was discussed. Many cases there cited sustain the rule. Therein it was held that an expert opinion is admissible if the subject matter is such that the opinion of the expert will aid the jury and that the witness is qualified to give an opinion. The witness Stoever was of the opinion that the furnace as installed was faulty, defective, and as such was a dangerous instrumentality and caused the fire which destroyed Moyers' home. On the subject of opinions given by expert witnesses, see 32 C. J. S., sections 530–534; Brownfield v. Chicago, R. I. & P. Ry. Co., 107 Iowa 254, 258, 77 N.W. 1038, 1039.

██ In its opinion in the last cited case, our court quoted from the case of Settle v. St. Louis & S. F. R. Co., 127 Mo. 336, 30 S.W. 125, as follows: "When a cause is shown which might produce an accident in a certain way, and an accident happens in that manner, it is a warrantable presumption, in the absence of showing of other cause, that the one known was the operative agency in bringing about the result."

In the instant case Stoever stated it was his opinion that a faulty bearing in the blower probably caused it to stop, resulting

in overheating. It was shown that on a prior occasion when the fan ceased to operate and the furnace immediately overheated prompt action had to be taken to remove the danger. Certainly the witness was entitled to draw inferences from the facts shown as to the cause of the fire. The fact of the low clearance between the top of the furnace and the floor above—four to five inches— when a Standard Building Code gave the minimum clearance of eighteen inches; the failure to insulate above the furnace and to install a limit control; the fact that the fire when first seen was above the top of the furnace—all would be factors which a witness could properly consider in giving an opinion as to the cause of the fire.

The trial court's statement denying the motion for a new trial and for judgment notwithstanding the verdict is so appropriate that we will set out parts thereof wherein the court said:

"Without extensively reviewing the record it should be noted that there was testimony as to previous overheating of the furnace and the effect thereof; that the blower had rattled, pounded, knocked and scraped, requiring frequent lubrication and indicating faulty bearings; that the filters made it a dangerous and hazardous system; that the top clearance was not reasonably safe; that reasonable care required insulating material; that installation without a limit control was very dangerous; and that the system was not of reasonably safe design and construction for installation. There was testimony that the clearance, filters and lack of limit control were causes of the fire. The first flames were located along the joists above the furnace. There was additional testimony and, of course, some of the matters were disputed. In considering the contentions made by defendant all of the evidence and logical inferences to be drawn therefrom must be viewed in the light most favorable to plaintiffs."

We hold that the court did not err in the particular as claimed by appellant and above set forth. We hold that the evidence in the record considered under the rule made a jury question.

III. Another error urged by appellant was that as there was no evidence of a failure of the blower system at the time of

the fire the court erred in permitting witnesses to assume that such failure existed.

It was one of the claims of negligence urged by plaintiffs that the installation of a blower system without automatic controls was hazardous, unsafe and dangerous. Plaintiffs' evidence tends to show that such an appliance, either stuck by defective bearings or by lack of power, could have caused the fire. There was the testimony of lay witnesses that when the blower ceased to operate there followed an overheating of the furnace. There was some literature issued by appellant to the effect that overheating might result from a stoppage of the fan, thereby creating a hazard. Dr. H. J. Stoever, in answering the hypothetical question, discussed the matter of the control of the furnace and in connection therewith stated: "I believe that in all probability the fan stopped because of the faulty bearings and then the sequence of events that I have already described resulted." Earlier Doctor Stoever had testified that the failure of the blower would cause heat to accumulate in what he called the bonnet of the furnace and when it reached a certain point it ignited the dry flooring above. When we consider the time and experience which Doctor Stoever had in dealing with heating systems, such as hot-air furnaces, it seems to us that he could properly give an opinion as to what might have or could have caused the fire. This was especially true as there was evidence of lay witnesses as to the failure of the blower to operate. See 20 Am. Jur., Evidence, sections 795, 796. As to opinions of experts and their proper field see Roberts v. Koons, 230 Iowa 92, 96, 296 N.W. 811. Therein it is stated that one who possesses exceptional skill or knowledge can properly give an opinion where the facts are such that persons of average intelligence are likely to prove incapable of arriving at a correct judgment. Some of the facts set forth in the preceding division are applicable to the matters set forth in this division. Grismore v. Consolidated Products Co., supra. We see no merit to this claim of error.

IV. The next error urged is that the trial court should have withdrawn from the jury the allegation of negligence that defendant provided and installed a defective bearing or lubricating system in the fan or blower.

We think that the court acted properly in permitting the allegation to remain. The court instructed the jury that they could properly pass upon the question as to whether the blower fan was defective as alleged by plaintiffs; also as to the .duty of defendant to install the heating system so that it was reasonably suited to the purpose for which it was purchased. Many authorities could be cited to the effect that when a heating system is not properly installed it becomes a dangerous instrumentality and that a high degree of care is required by those who install them. See Holland Furnace Co. v. Nauracaj, 105 Ind. App. 574, 14 N.E.2d 339. The court further instructed the jury that they could properly pass upon the question as to whether defendant knew or in the exercise of reasonable care should have known of such defect. Plaintiffs had nothing to do with the installation— all this was under the control and direction of defendant. See Crane Co. v. Davies, 30 Ala. App. 471, 8 So.2d 189, and authorities there cited. Again we call attention to the testimony of Doctor Stoever to the effect that in his opinion the blower was defective. Had this furnace been inspected following its installation this defect could likely have been discovered. It .seems to us it was proper for plaintiffs to plead such defect and that the court did not err in refusing to withdraw the allegation.

V. Appellant urges as error the admission of the testimony of Earl Moyers that he relied upon Sears-Roebuck & Company for the safe and proper installation of the heating system.

Moyers testified that he dealt with Sears-Roebuck & Company and that he relied upon the representations of Stanley that such company would install the heating system in a safe and proper manner. The appellant objected to such testimony on the grounds that there was then in evidence the contract between the parties; that the installation was to be made by Al High who contracted to do the installation. The objection was overruled and the witness was permitted to testify that he relied upon the assurances of Stanley as to the installation.

We do not think the court erred in admitting the testimony that Moyers had no dealings with High—he dealt at all times with appellant. He negotiated with Stanley as to prices, types, location and the details of the installation. High used the data and figures prepared by Stanley, who introduced High to Moyers as

the person who was to install the furnace. High knew nothing as to prices or terms; he was paid by appellant, and what he did was under its direction. There is no dispute in the record that all the plans and specifications for the installation of the furnace were prepared by Stanley and that High followed them in his work.

There were in evidence letters which appellant had sent to plaintiffs after the loss. In one dated July 12, 1948, H. N. Wilson, manager of appellant company, in response to a request of plaintiff for a copy of the original Proposal Form (called a contract by appellant) to replace the copy plaintiffs had which was lost in the fire, makes reference to the installation of the furnace *"we installed in your home."* (Italics supplied.)

The court dealt with the question of the status of High in instruction No. 13 and left it for the jury to determine whether or not the installation was by appellant or by High, as an independent contractor. It seems to us that after appellant sold the furnace and the loss took place it sought to avoid responsibility and liability by claiming that High was an independent contractor, and as such did the installation. We hold that under the record Moyers could properly testify that he relied upon appellant to properly install the furnace. In this connection see Wright v. Holland Furnace Co., 186 Minn. 265, 243 N.W. 387. We hold that the court did not err in permitting Earl Moyers to testify that he relied upon assurances given him by Stanley, appellant's representative, who made the sale to plaintiffs.

VI. Appellant urges as error instruction No. 7 wherein the court, among other things, advised the jury that appellant sold the heating equipment in question and *"designed and planned* the installation." (Italics supplied.) The alleged error is the giving of the italicized words—designed and planned. The appellant assumes that this instruction relates to a disputed question of fact. We do not so understand it. We find no dispute in the record that anyone other than appellant, through its salesman Stanley, designed and planned the installation. Stanley admits he made the plans, designs and calculations for the installation. We do not think the authorities cited by appellant apply as there was no dispute in the record as to who designed and planned the installation. Had there been a dispute in the facts upon this matter

such instruction would not have been proper. We find no error in the giving of such instruction.

VII. Another error charged relates to the giving of instruction No. 8 and particularly that part which permitted the jury to find that appellant planned the system and failed to provide adequate top clearance or adequate installation. This claimed error is so closely related to error No. 5 as above set forth that much of what we stated therein has application here. Again we state that it was appellant's agent Stanley that examined the home of plaintiffs—the various rooms and basement—and then prepared the figures and plans for the installation of the furnace and the equipment connected therewith. Regarding the top clearance—Stanley drew up the plans—he does not deny it. High testified as to the plans etc. He said: "He [Stanley] thought it would be a good idea for me to be present when he drew the plans. Mr. Stanley usually drew up the plans and I installed the furnace and that is what happened there. Mr. Stanley drew up the plans, I didn't have nothing to do with those." So there was no dispute as to such matter and the trial court was fully justified in ruling: "The finding could be made that High had nothing to do with some of these factors. * * * Stanley prepared them, and he put in the furnace and all of the equipment as instructed by Stanley."

We hold there is no merit in this complaint to instruction No. 8. We fail to see where the authorities cited by appellant are applicable. In the case of Heacock v. Baule, 216 Iowa 311, 249 N.W. 437, 93 A. L. R. 151, there was an injury caused by an automobile to a pedestrian when the latter was crossing the highway. The auto came over the top of a hill some two hundred sixty-six feet away. The issue was as to the failure of the driver of the car to sound the horn. We can see nothing to indicate that the case is applicable here.

VIII. Appellant urges that instruction No. 8 was further erroneous in that it placed a duty to examine, inspect and repair upon Sears-Roebuck & Company after complaint had been made. Plaintiffs in pleading alleged that appellant was negligent in that after specific complaints had been made as to the operation of the furnace it failed to do anything to remedy such conditions and by failing to inspect and install limit heat controls.

1052

We have been cited to no Iowa case bearing directly upon the point raised by the objection to the above instruction. However, we find that courts from other jurisdictions have dealt with that matter. The case of Curtis v. Sears-Roebuck & Co., 298 Mich. 539, 299 N.W. 706, was a suit for damages claimed to have been caused by the explosion of a defective stove purchased from the defendant. The jury returned a verdict for plaintiff and on appeal this was affirmed. The Michigan court held that when complaints had been made as to defects in the stove the defendant could be held negligent in failing to correct the same. There was another appeal growing out of the same explosion as shown in Gimino v. Sears-Roebuck & Co., 308 Mich. 666, 14 N.W.2d 536. This case reaffirms the holding in the Curtis case and holds, in effect, that the defendant had an obligation of inspecting and repairing the stove purchased from defendant and that its failure to do so was properly submitted to the jury to permit them to pass upon the question of defendant's negligence. See also Fry v. Sears-Roebuck & Co., 271 Mich. 469, 260 N.W. 906. As throwing some light upon the obligation of a contractor to properly install and inspect see Wright v. Holland Furnace Co., supra. In that case a house and contents were destroyed, wherein the claim was made that the installation was negligently done. In that case the claim was made that the hot-air pipes were too close to the floor joists. The evidence showed that the owner had called attention to the fact that the pipes were too close to the wood joists and the installer said "he would fix that all right." (Page 268 of 186 Minn.) The evidence showed that the fire when discovered was burning the joists directly over the furnace. The court held that the question of negligence as charged by the plaintiff was one of fact and for the jury.

Another case which lays down rules regarding furnaces and installations is that of Holland Furnace Co. v. Nauracaj, 105 Ind. App. 574, 584, 14 N.E.2d 339, 344. Speaking of the duty a seller owes the purchaser of such an article the court said: " 'One who supplies a thing for such use by others that it is obvious that any defect will be likely to result in injury to those so using it is liable to any person who, using it properly for the purpose for which it is supplied, is injured by its defective condition.' "

Under the subject of Negligence we call attention to the annotation of volume 74 A. L. R. at page 347, where it lays down the rule of the duty of the seller to make an inspection where the article sold has some defect. In the instant case there were complaints made as to a defect in the operation of the furnace. Following this we think that the jury could properly find that such complaint should have been investigated.

In making the complaints Earl Moyers had in mind the danger of overheating and made inquiry as to a limit control for the furnace. Naturally he had in mind the fear of fire to his property —fear well justified in the light of what happened. The danger from the installation was testified to by Doctor Stoever when he said that the failure to have a limit control on the furnace created a very dangerous situation.

In connection with the claim of plaintiffs that appellant was negligent in not inspecting the furnace after Moyers made complaints, also his inquiry as to heat controls, we think it proper for the jury to consider the conduct and attitude of Stanley. The sale had been made and appellant had been paid. Stanley admitted that Moyers came to him with complaints that the furnace seemed to be overheating, also that he may have inquired as to limit or heat controls. To his complaint as to overheating Stanley said that he referred him to the service department: "That is all I am supposed to do about it. * * * I never sent anyone out, back to inspect it after Mr. Moyers came down and asked me if there was any danger of overheating. I didn't send anyone up to inspect the house. That isn't my job." There was a pamphlet put out by appellant dealing with the furnace sold plaintiffs. From it we quote: "This furnace can be automatically controlled by installing a Homart Damper Regulator and a Furnace Limit Switch to prevent overheating." There was also a pamphlet or manual introduced by appellant setting forth installation standards recommended for industry. Appellant's expert witness, Walker, quoted from such manual that the omission of limit control in furnaces was "unsatisfactory and may be hazardous." Doctor Stoever testified that omission of heat control in a furnace might create a dangerous situation. He further testified that an installation without the automatic limit control was defective.

1054

All of this could properly lead to the inference that appellant regarded the omission of limit control of the type of furnace sold plaintiff could or might produce hazards such as to render operation unsafe.

We do not find in the objections made to instruction No. 8 any objection to the court's statement therein of a duty to install a heat limit control. Other matters in the instruction were objected to but we find no reference therein to the limit control.

Outside of the testimony of Doctor Stoever on this matter there was other evidence that the installation of limit control would obviate hazards in operation. We hold the instruction was not vulnerable to the objections made.

We find no error in the record and the case is affirmed.—Affirmed.

All JUSTICES concur.