Eunice Butters, Appellant, v. Chicago, Milwaukee, St. Paul & Pacific Railroad Company, Appellee.

No. 41318.

June 24, 1932.

Kenline, Roedell, Hoffman & Tierney, for appellant.

Hughes, O'Brien & Faville and Brown, Lacy & Clewell, for appellee.

Wagner, C. J.—A narrow-gauge line of railroad belonging to the defendant company runs east and west through the incorporated town of Zwingle, a town of 149 inhabitants. This line of railroad connects the towns of Bellevue and Cascade. U. S. Highway No. 61 runs north and south through Zwingle.

The accident in question occurred at the crossing of said highway with the railroad. Each day two trains go east and two go west over this line of railway; all trains, according to schedule, arrive at Zwingle in the daytime, except one going west, which is due at Zwingle at 7:15 P. M. The distance between Bellevue and Cascade is 35.6 miles, and the scheduled time for making said distance of said train going west is three hours. The parties occupying the automobile at the time in question reside in East Moline, Illinois. It appears from the record that, on the 6th day of September, 1930, Mrs. Butters and the baby were at Colesburg, Iowa, and that Butters and Seefeldt, in the "Model A Ford Coupé Pickup" belonging to and driven by Seefeldt, made the trip on U. S. No. 61 from Moline to Colesburg, where they got Mrs. Butters and the baby and began their return trip from Colesburg to Moline on the same highway. They arrived at Zwingle just as the train going west was pulling out of the town. Seefeldt drove the car and Mr. and Mrs. Butters occupied the same seat with the driver, the baby sitting on the mother's lap. The automobile was in perfect running condition and was fully equipped with lights, which complied with the statute. It was dark before the automobile party arrived at Zwingle. The pavement on the highway was dry, and 18 feet in width. The defendant company maintains in the town both a main track and a switch track, the main track being from 13 to 15 feet south of the switch track. On the right-hand side of the street going south, in close proximity to the railroad, is the usual cross-buck sign, with the words "Rail-Road Crossing" conspicuously painted thereon. On the right shoulder of the highway, 380 feet north of the main track, is a railroad disc sign two feet in diameter, with the letters "R. R." and two black stripes underneath. On the right shoulder, 556 feet north of the main track, is a conspicuous sign denoting residence district and that the speed limit is 25 miles per hour. Suspended in the center of the street, 80 feet north of the switch track, there was a 100-watt candle power electric light, and in the center of the street, 98 feet south of the south track, is another one of the same description. There are other street lights, both to the north and south of the ones just mentioned. The depot stands 105 feet east of the center of the U. S. Highway No. 61; on the east side of said highway, north of the tracks, there is an open space and a street; on the

east side of said highway and the north side of said street stands a building. The distance from said building to the track is 90 feet. There was no obstruction of the view toward the east after getting past the store building. On the west side of the highway in question stands a building about 20 feet wide. Thus it is seen that there was no obstruction to the view toward the east to one coming from the north after getting 90 feet from the crossing, and practically no obstruction to the view toward the west. From the crossing the highway runs 228 feet straight north, and then there is a slight curve to the right, the north end of the curve being 467 feet north of the crossing. This is a five-degree curve. In going north from the crossing, there is an incline, a six and one-half per cent grade, and from the beginning of the curve on northerly the extent of the grade gradually decreases. At the point 228 feet north of the crossing, the highway is 13.2 feet higher than at the track. From the railroad track south the surface of the ground is level for a distance of about 200 feet, and from that point there is a six per cent grade to the top of a hill.

On the evening in question, the train came from the east, whistling as it entered the town. The engine pulled across the highway so as to leave the passenger and baggage car at the depot. The train was there a few minutes, for the exchange of mail, when it began to pull out. The evidence establishes the fact that the whistle was not sounded nor the bell rung as the train began to move from the depot. The automobile party came from the north, traveling from 30 to 40 miles per hour. At a distance of about 150 feet north of the tracks they met an automobile going north. The automobile party continued in a southerly direction, with no material decrease in speed, and struck broadside the tenth car from the engine of the moving train. Seefeldt and Butters, who were in the automobile at the time in question, and both of whom gave testimony in behalf of the plaintiff, testified that they did not see the train or any obstruction across the highway ahead of them until just an instant before the collision. The plaintiff was seriously injured as a result of the collision. There is virtually no conflict in the testimony, and the foregoing sufficiently states the facts which are necessary for the determination of the questions presented.

At the close of the evidence, the defendant presented a

motion for a directed verdict, basing the same, among other grounds, upon the following: That upon the entire record there is no evidence of actionable negligence upon the part of the defendant; that there is no evidence of actionable negligence upon the part of the defendant which was the proximate cause of the collision; and that, upon the entire record, the plaintiff has failed to sustain the burden of proof required, and if the case were submitted to the jury and verdict rendered in favor of the plaintiff, it would be the duty of the court to set the same aside. This motion was sustained. This ruling by the trial court presents the primary complaint urged by the appellant.

The plaintiff urges that the defendant failed to continuously ring the bell on the locomotive engine attached to said train, until said crossing was passed. The evidence fails to establish any failure to give the statutory signals before and at the time when the engine passed over the crossing. When the train had stopped, the engine was a hundred feet or more west of the highway in question, the passenger coach at the depot, and the intervening cars across the highway at a right angle thereto. Plaintiff's contention is that the train had not passed over the highway, and that it was the statutory duty of the defendant to ring the bell continuously until the entire length of the train had passed over the crossing. In this the plaintiff is in error. Section 8018, Code 1927, provides:

"A bell and a steam whistle shall be placed on each locomotive engine operated on any railway, which whistle shall be twice sharply sounded at least sixty rods before a road crossing is reached, and after the sounding of the whistle the bell shall be rung continuously until the crossing is passed; * * *"

It will be noted that there is nothing said in said section about a train; there is nothing therein mentioned about the crossing's being passed by a train,—it refers only to an engine operated on any railway. The bell shall be placed on the locomotive engine operated on any railway and shall be rung continuously until the crossing is passed,—manifestly by the engine to which the bell is required to be placed. It must also be borne in mind that, contrary to the general rule, in this instant case the engine did not collide with the automobile, but, on the contrary, the automobile collided broadside with a car in the rear

portion of the train. It is quite obvious that there was no breach of statutory duty on the part of the defendant for failure to ring the bell in starting the train to move from the depot and for failure to continue to ring the same until the entire train had passed over the crossing.

But the plaintiff contends that, under the record, the giving of the statutory signals is not sufficient to relieve the defendant from negligence; he contends that the record is such as that a jury should be permitted to say that the crossing is one of unusual danger, and that, if the triers of the fact should find it to be such, then the railroad company in the exercise of ordinary care is required to give notice or warning, other than and in addition to the statutory signals. The evidence conclusively shows that no such additional notice or warning was given, except by the signs hereinbefore mentioned. The plaintiff is correct in his contention that, if the crossing is one of unusual danger, then the defendant, in the exercise of ordinary care, is required to give notice or warning, other than and additional to the statutory signals. The question presented by the instant case is whether, under the facts as shown by the record, a jury should be allowed to find that the crossing is one of unusual danger. In Glanville v. Chicago, Rock Island & Pacific Railway Company, 190 Iowa 174, at 180, we said:

"Under what circumstances a railroad company is required to keep a flagman at a crossing, or to maintain some device for warning persons of an approaching train, is not prescribed by statute. It is only to be done when ordinary statutory signals are insufficient as warning to travelers about to make use of a crossing of unusual danger, and the railroad company, in the exercise of ordinary care, is required to give other notice or warning, additional to those ordinarily given. * * * 'Whether such omission [omission to give other signals] is negligence depends upon the circumstances, such as the frequency with which trains are passing, the amount of travel, the opportunities, or want of opportunities, for travelers observing the approach of trains, and the like.' "

It will be noted that, in the instant case, the operation of trains upon the defendant's railway was not frequent; the record does not disclose that the travel upon the highway at the point

in question exceeds that upon paved highways of like kind and character. After one coming from the north arrives at a point 90 feet north of the track, he has a clear vision of the track to the east, and there is practically no obstruction to the view toward the west. Moreover, it must be borne in mind that the collision in this case was not with the train striking the automobile from either direction, but was the result of the automobile's running broadside into a car in the rear portion of the moving train directly in front of the automobile. We further said in the Glanville case:

"It seems, however, that, before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous."

In O'Brien v. Chicago, Rock Island & Pacific Railway Company, 203 Iowa 1301, in holding that under the record of that case the question should not have been submitted to the jury, we said:

"We are not unmindful of the rule in this state and other states that, where a railroad crossing is peculiarly and unusually dangerous or hazardous for the traveling public, it is a question for the jury to say whether or not, under this situation, a flagman or other protective device should be kept at such crossing. We have before us evidence as to the character of this crossing and its surrounding conditions. We are aided also by numerous photographs, taken of the situation from various angles, and we must say that, under the evidence in this case, the crossing in controversy was not such a crossing as to come within the purview of the aforesaid rule."

In that case, the approaching engine connected to a train struck the automobile, instead of, as in the instant case, the automobile's striking a car in the rear portion of the train. As in that case, we also have photographs before us which fully show the situation and surroundings, all of which have been carefully inspected by us. The description and view of this crossing, as we get it from the photographs and the testimony of the witnesses, indicate that it is no more dangerous or hazard-

ous than the ordinary railway crossing in any of the small towns in this state. As bearing upon our conclusion, we also cite the following decisions from our sister states: Gulf, M. & N. R. Co. v. Holifield (Miss.), 120 So. 750; Philadelphia & R. Ry. Co. v. Dillon (Del.), 114 Atl. 62; Gage v. Boston & M. R. R. (N. H.), 90 Atl. 855; Jacobson v. New York, S. & W. R. Co. (N. J.), 94 Atl. 577; St. Louis-San Francisco Ry. Co. v. Guthrie (Ala.), 114 So. 215. In the case last cited, the plaintiff therein asked for damages caused by running into a train which obstructed the street in a town. The court, in holding that the defendant company was not liable, said:

"It can hardly be contended with reason that the precautions in respect of which, according to the complaint as thus far stated, the defendant failed in its duty, would be necessary in the daytime. It would seem to be a reasonable corollary that on any occasion, day or night, when the occupation of the crossing would be visible to a traveler using such care for his own safety as the employees of the railroad have a right to presume he will use, in time to allow the traveler to stop before coming into collision with the cars, the railroad ought not to be held liable."

In Gulf, M. & N. R. Co. v. Holifield (Miss.), 120 So. 750, the plaintiff instituted suit to recover damages to his automobile, which had been driven into certain freight cars which were standing on and across one of the streets of the city. In holding that the defendant was entitled to a directed verdict, the court said:

"The appellee contends that the employees of the appellant company knew, or in the exercise of ordinary care should have known, that on account of the absence of lights at this crossing and the consequent darkness, the low street with buildings on each side thereof, and dust on the street, and other circumstances in evidence, a person driving on the highway at a reasonable rate of speed in an automobile properly equipped with lights, and carefully operated, would be liable to come into collision with the train, and consequently that under these circumstances it was negligence for this train crew to so leave these cars without stationing a man at the crossing to give warning that it was obstructed by the cars. We are unable to give our assent to

this contention of the appellee. ‾The appellant had the right to occupy the crossing for its legitimate business purposes, and while so occupying the crossing it was not required to maintain lights on its cars, or to station a man with a lantern at the crossing to give warning that it was obstructed by the cars, unless the conditions and circumstances were such that the employees knew, or in the exercise of reasonable care and caution should have known, that a person driving upon the street at a reasonable rate of speed in an automobile properly equipped with lights, and carefully operated, could not see or might not be able to see the cars in time to avoid a collision therewith, or, in other words, as said by the Supreme Court of Alabama in the case of St. Louis-San Francisco Railway Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110: 'The employees of the defendant, in the absence of some peculiar environment, are justified in believing that travelers in automobiles properly lighted and driving at reasonable speed will observe the cars upon the crossing in time to avoid coming into collision with them.' * * * We are of the opinion that the employees of the appellant as reasonable men had the right to assume that, under all the circumstances shown by this record, the occupation of the crossing by these box cars would be visible to a person who was driving along the street in an automobile properly equipped with lights, and who was keeping a constant lookout ahead, in time to allow such person to stop before coming into collision with the cars, and consequently that the proof in this case fails to show negligence on the part of the appellant. For authorities in harmony with the views herein expressed, see the cases of Gilman v. Central Vermont R. R. Co., 93 Vt. 340, 107 A. 122, 16 A. L. R. 1102; Gage v. Boston & Maine R. R. Co., 77 N. H. 289, 90 A. 855, L. R. A. 1915A, 363; McGlauflin v. Boston & Maine R. R. Co., 230 Mass. 431, 119 N. E. 955, L. R. A. 1918E, 790; Orton v. Penn. R. R. Co. (C. C. A.), 7 F. (2 Ed.) 36; St. Louis-San Francisco Ry. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110.''

In Philadelphia & R. Ry. Co. v. Dillon (Del.), 114 Atl. 62, the plaintiff sought to recover damages by reason of driving his automobile into a train of cars which was standing across the street in a city. The court, in holding that the defendant was not liable for negligence said:

"Here, then, the railroad company had a right to assume that the plaintiffs would act in a reasonable way to avoid running into the train of box cars while it was lawfully standing across the highway. If the defendant's trainmen had a right to assume that a reasonably careful man driving an automobile on a highway at night would use such lights and adopt such a rate of speed as that he could bring his machine to a standstill within the distance that he could plainly see by the lights on his machine a railroad box car twelve feet high standing across the highway motionless on a railroad track, and completely obstructing his passage along a straight unobstructed highway, then the defendant did not then omit to perform any duty by not showing lights, or giving other warning of the presence of the train. * * * 'We are of opinion that upon the evidence the conditions shown were not such as to warrant a finding that the defendant was negligent in failing to provide lights or a flagman, or to give other warning.' * * * *It, therefore, follows that if the defendant was not negligent it cannot be held liable for the injuries to either the driver or his guest in his private machine, whether the driver was careful or negligent.*" (Writer's italics.)

In Gage v. Boston & M. R. R. (N. H.), 90 Atl. 855, the plaintiff asked damages occurring by reason of the driver's having run the automobile into a slowly moving train. In holding that the defendant company was not liable, the court said:

"What duty did the defendant owe to the plaintiffs at the time of the collision which it failed to observe, and the breach of which was the proximate cause of the injuries they suffered? The burden was on them to prove that the defendant was negligent in its management of the train at the crossing, and that its negligence in that respect was a proximate cause of the collision. At the trial the plaintiffs' contention was that the defendant's negligence could be found from its omission to provide gates with lights at the crossing, or in not having at that place a crossing tender to warn travelers that the crossing was occupied by the train. *There is no contention that these precautions would be necessary in the daytime, or at any time when the occupation of the crossing by one or more cars would be visible to a traveler in time to allow him to stop before reaching*

*the crossing. When cars are upon a crossing under such circum-stances the fact that they are there is a sufficient warning to the traveler upon the highway that he cannot occupy the cross-ing at the same time. No other signals or warnings are neces-sary or required in the absence of a statute imposing such a duty upon the railroad;* \* \* \* (Writer's italics.) The plaintiffs were not injured by being run into by the defendant's locomotive, but by running into the defendant's freight car as it was slowly passing over the crossing. \* \* \* If the defendant through its agents, the trainmen, in the reasonable management of its train, which was rightfully on the crossing, is not chargeable with knowledge that an automobile, bearing headlights of sufficient power to enable the chauffeur to avoid any obstruction in the road, was yet likely to crash into the train unless a danger signal or flagman with a lighted lantern was stationed in the highway by the side of the train, its omission to provide such safeguards for the plaintiffs' benefit was not the proximate cause of their injuries. \* \* \* In order to charge the defendant, it must be found from some substantial evidence that its servants, in the exercise of ordinary care, would have understood that they were main-taining at the crossing an obstruction which, on account of the darkness, was a dangerous obstruction to people riding in an automobile, driven at a reasonable rate of speed and equipped with strong lights. To hold that such evidence exists in this case is to overturn the rule that a verdict based upon conjecture cannot stand \* \* \*.''

It must be borne in mind that plaintiff's action is founded upon negligence. There was no omission on the part of the de-fendant company to perform the statutory requirements. Neg-ligence is the doing of something which an ordinarily careful and prudent person, under the same circumstances, would not do, or the failure to do something which an ordinarily careful and prudent person, under the same circumstances, would do. The defendant company is not bound to safeguard against oc-currences that cannot be reasonably expected or contemplated as likely to occur. As said in Cox v. Des Moines Electric Light Co., 209 Iowa 931: ''Due care consists in guarding, not against possibilities, but only against probabilities.''

Any failure to ward against a result which could not reason-ably have been expected is not negligence. Under the record in

this case, the question of alleged negligence on the part of the defendant is a question of law for the court. The record fails to reveal any actionable negligence on the part of the defendant company.

'The other matters as to which the appellant complains relate to rulings of the court on the introduction of the testimony. All of the same have had our careful scrutiny and attention, and we find no error.

For the foregoing reasons, the judgment of the trial court is hereby affirmed.—Affirmed.

EVANS, STEVENS, ALBERT, DE GRAFF, KINDIG, and GRIMM, JJ., concur.