CHARLES DAVIS, Appellant, v. ED. SANDERMAN, Appellee.

No. 43841.

1002

DECEMBER 13, 1938.

REHEARING DENIED MARCH 17, 1939.

Hart & Hart, and H. Haehlen, for appellant.

G. B. Richter, and G. E. Lyons, for appellee.

SAGER, C. J.—This case is somewhat peculiar in this: The accident upon which it is based occurred December 2, 1930, and the trial below was not commenced until April 20, 1936. The case is also unusual in the relation of the actors involved.

At the time plaintiff sustained his injury one Hesse was a farmer in Allamakee county, as was his neighbor the defendant. Kerndt was a farm implement and machinery dealer, and plaintiff's employer. Hesse had some silo filling to do but no machine to do it with. Defendant had such a machine and, in a spirit of neighborly helpfulness, loaned it to Hesse without any consideration or advantage to himself. The machine was of such character as to require an engine to operate it, and to supply this Hesse rented a tractor from Kerndt. Kerndt directed plaintiff to deliver and operate the tractor.

Plaintiff claims some support in the fact that the silo filler was old, second-hand, and had been altered from the condition

in which it left the factory about eleven years before the accident. This is true, though its importance is not manifest because these changes had no connection with the injury except as will appear in what follows.

Defendant had owned the shredder only since some time in the previous month. He had operated it for about six or eight hours before loaning it to his neighbor; and, so far as the record shows, had not the slightest reason for suspecting the machine to be dangerous, or that it threatened injury when operated with any care whatever. And in the manner of its operation there was nothing which seems to have required telling.

The machine, in its essential parts, consisted of rolls behind which were knives which cut up cornstalks, which were then blown into the silo by that part of the machine called the "filler." A "feed" table about six feet long extended to within thirteen to sixteen inches of the rolls. When plaintiff operated the machine he stood upon a platform alongside and a part of the machine. In this position he was about three feet from the rolls. As the cornstalks were placed on the table plaintiff pushed them forward until the ends were engaged by the rolls. From then on the machine took or pulled the corn away from the table, the rolls snapping the corn from the stalks in the process. As the stalks came to the machine they were tied in bundles. The ties had to be cut, and to accomplish this a stick six or eight inches long, with a "sickle section" stuck into it, was used. Through a hole in this stick was run a piece of rawhide or whang leather, fashioned in a loop, which, slipped onto the wrist, served to keep the knife from getting away from the operator.

Plaintiff says that his injuries were due to defect in the machine with reference to a clutch which was too far away (according to his petition) or which he did not see at all (according to his testimony); that the feeder table sloped a little so that the stalks had to be lifted a little so the rolls would take them in. He complains, too, that defendant was negligent in furnishing him a knife which was attached to his wrist by a fastening so strong that it did not break when the knife was, as he claims, caught in some undisclosed place and manner, and as a result the rolls drew his hand into the machine. He alleges that he did not know until after the accident that the loop about his wrist was whang leather. He argues that had the loop been

of string of other material it would have broken under the strain and his hand would have escaped the rolls.

After the silo cutter and tractor were placed in position plaintiff started the tractor and shredding began. For a time defendant fed the machine, plaintiff watching for a number of minutes. After a time defendant motioned to plaintiff to come over and do the feeding, and plaintiff responded, taking the knife, slipping the loop over his hand to his wrist, and starting to move the stalks to the rolls. This he continued to do for about two and one-half hours, until he was hurt. Defendant had meanwhile left the premises and does not appear again in the record.

From the foregoing brief narration of facts there are suggested three questions: (1) Was the plaintiff free from contributory negligence; (2) was the defendant negligent; and (3) did plaintiff assume the risk incident to the operation of the machine in question?

We direct our attention to the question of defendant's negligence. The plaintiff in his petition describes himself as a "machinist, engineer, mechanic and salesman." It appears that he had had experience with farm machinery of different types far in excess of that of the defendant, who presumably had only the ordinary experience of a farmer with the type of machinery used in that vicinity. There was nothing about the operation of the silo filler, or its construction, to suggest any danger. The operation of the machine itself, and its purpose and method of operation, were obvious and manifest. The rolls which caught the plaintiff's hand were in plain view and at such distance from the operator as not to threaten injury. Just how plaintiff's hand was caught is not clear from the record, but it is certain that plaintiff's hurt resulted from no fault of the defendant. Plaintiff says that the feed table sloped a little so that he was compelled to lift the stalks somewhat so the rolls would take them in, but this was an operation so simple that it is hard to believe this could be seriously put forward as a basis for a claim of negligence. There was nothing the defendant could have said as a warning against possible injury, there being no dangers which were not apparent on casual inspection.

We do not overlook the complaint about the knife. We are at a loss to know what warning could have been given him in regard to this, if the knife was the cause of the injury. How the knife became entangled in the rolls, if it was, is not shown;

but it goes without saying that the consequences of its becoming entangled in the machinery in any way were just as apparent to plaintiff as they were to defendant.

There was nothing about the knife or its use which would suggest the need of telling plaintiff how to use it. He was forty-nine years old at the time he was hurt. During all his adult years he had been familiar with farm machinery of all kinds, including the operation of caterpillar tractors, and silo fillers (though not of this make); and since May he had been employed by Kerndt in selling and servicing farm machinery.

What, then, did the law require of the defendant?

As we read the record, defendant was under no obligation to warn of alleged dangers, because there were none latent and none that were not as apparent to plaintiff as they were to defendant, and the relation of the parties was not such as to demand from the defendant the degree of care which plaintiff insists should have been exercised.

Defendant, in his relation to the machine in question, was at most a gratuitous bailor. He received nothing from the lending except the satisfaction which comes from having done a good turn for a neighbor. There was nothing about the machine to suggest that it was dangerous, and no latent dangers or defects were shown. If it had been dangerous, his liability would be tested and measured by rules thus summarized in Restatement of the Law, vol. 2, Torts, sec. 388:

"One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

"(b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

In the state of this record these principles, by their bare statement, would seem to be sufficient to sustain the ruling of the trial court. And in their application they dispose of plaintiff's contention that because he was an invitee he was entitled to special care. Plaintiff says he was an invitee because defendant asked him to run the shredder. Assuming, without deciding, that this is so, defendant owed him no duty greater than he would owe to his servant, or to his neighbor who might come to his farm on matters of mutual advantage.

 If defendant was a gratuitous bailor, as we think he was, his obligation may be summed up in this way:

"One who gratuitously supplies chattels for another owes a duty similar to him who permits another gratuitously to come on to his land exclusively for the benefit of the other. The fundamental considerations of policy are the same. In both cases the license is granted for the exclusive benefit of the licensee. The gratuitous lendor of chattels, deriving no advantage from the relationship, owes no affirmative obligation to his donee to see that the chattel is free from danger. The gift must be taken, if at all, in the condition offered." Harper on Torts, sec. 104.

 If the bailment can in any view be said to have been for the advantage of defendant, then his obligations were no greater than this:

"A person supplying chattels for use by another in a manner and for a purpose in which the supplier has a pecuniary beneficial interest or for which he is receiving compensation is in a position analogous to one upon whose premises 'invitees,' as distinguished from 'licensees,' have come. The considerations are the same and each affords a common sense basis for affirmative obligations. Accordingly, the duty of such a supplier of chattels pertains to risks similar to those falling within the range of the duty of an occupier of land toward persons coming onto his premises for purposes mutually beneficial. This includes unreasonable risks due to the condition or disrepair of the chattel or its unfitness or inadequacy for the purpose for which it is supplied. The supplier must use reasonable care to discover such defects. The user of such article may fairly assume and he is entitled to rely upon the supplier's care and diligence, and he assumes only such risks as are not known and not discoverable

by ordinary prudence on the part of the supplier." Harper on Torts, sec. 105.

Citations might be multiplied, but we content ourselves with a few. If we have appeared to neglect the authorities called to our attention by the briefs, they have not been overlooked. These citations, and many others, have been examined. We have selected such as are here cited because they exemplify applicable principles without unduly extending this opinion. See, generally, Nelson v. Smeltzer, 221 Iowa 972, 265 N. W. 924; Note to Johnson v. H. M. Bullard Co., 95 Conn. 251, 111 A. 70, 12 A. L. R. 766, at page 774; Note to Saunders System Birmingham Co. v. Adams, 217 Ala. 621, 117 So. 72, 61 A. L. R. 1333, at page 1336; Nesmith v. Magnolia Petroleum Co., Tex. Civ. App., 82 S. W. 2d. 721; Blom v. McNeal, 199 Minn. 506, 272 N. W. 599; 45 C. J., Title, Negligence, secs. 270 and 335.

Language appropriate to the situation before us is used by Cardozo, J., in Greene v. Sibley, Lindsay & Curr Co., 257 N. Y. 190, 177 N. E. 416, 417:

"The measure of the defendant's duty was reasonable care. (Citing cases.) Looking back at the mishap with the wisdom born of the event, we can see that the mechanic would have done better if he had given warning of the change of pose. Extraordinary prevision might have whispered to him at the moment that the warning would be helpful. What the law exacted of him, however, was only the ordinary prevision to be looked for in a busy world. He was doing a common and simple act in the plain sight of those around him. The act did not involve a continuing obstruction with the indefinite possibilities of mischief that permanence implies."

What has gone before obviates the necessity of passing on the question whether plaintiff was guilty of any negligence contributing to his injury.

Nor are we called on to determine the matter of assumption of risk, though it is apparent that, as an adult familiar with machinery and in the full possession of his faculties, plaintiff may not recover for injuries sustained from hazards that he must have seen unless he worked without reasonable attention to what he was doing.

Other matters argued by plaintiff are implicit in and disposed of by what has been said.

Finding no error the judgment of the trial court is affirmed. —Affirmed.

All Justices concur.