SAMUEL DAVIS, appellant, v. THE COATS COMPANY, appellee.

No. 50789.

(Reported in 119 N.W.2d 198)

14

JANUARY 15, 1963.

REHEARING DENIED MAY 7, 1963.

James G. McDowell, Jr., and Henry J. Haugan, of Des Moines, for appellant.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, and John H. Mitchell, of Fort Dodge, for appellee.

PETERSON, J.—Plaintiff was the owner of an automobile service station in Ambler, Pennsylvania, a suburb of Philadelphia. In December 1957 he purchased a tire changing machine manufactured by defendant. In connection with inflating a snow tire an explosion occurred, through the sudden release of air between the tire and the rim. The tire and rim flew upward, striking and breaking plaintiff's arm. He claims the injury occurred on account of a defective rod on the machine. The jury returned verdict for plaintiff. The trial court sustained motion for judgment in favor of defendant, notwithstanding verdict. Plaintiff appealed.

There is only one primarily important question in the case. When a machine manufacturer sells a tire changing machine is he liable to an injured user under following conditions? The injury was not caused by the tire changing mechanism, but by the operator being struck by a tire violently blown high in the air when being inflated after it was changed.

I. Plaintiff was the owner and operator of the service station. Defendant was a manufacturer of what was commonly known as "Coats Iron Tireman", a tire changing machine. The machine was patented by Mr. Coats and he started manufacture of it in Fort Dodge in 1956. After plaintiff purchased the machine he regularly changed and serviced from 50 to 100 tires per month.

The machine is largely composed of a round platform eighteen inches in diameter located on an iron standard twenty-five inches above the ground, upon which the tire is placed for removal from, and replacement on, the rim. There are some gadgets on the machine which assist an operator in the removal and replacement. The value and advantage of the machine is changing the tire on a platform twenty-five inches above the ground instead of kneeling down or bending over and doing the work on the ground.

Among other appurtenances on the machine is a rod which extends from above the tire on the platform to the base of the

machine. A foot release is attached to the rod at the base. The proper and instructed procedure is to fasten the top of the rod, which has a hook upon it, to a gadget holding the tire and rim while the tire is being removed and replaced, and to fasten the bottom of the rod with another hook to the foot release at the bottom of the machine. The evidence clearly establishes that the only purpose of the rod is to hold the rim and tire steady while the tire is being removed and replaced. *Before the tire is inflated* the rod should be released by the operator's foot.

The case at bar arises because of an incident which happened at plaintiff's station on May 15, 1958. A customer came into the station to get a couple of snow tires mounted. After mounting one tire plaintiff proceeded to release the rod in accordance with written instructions contained in defendant's circular.

Part of the printed instructions of defendant to all operators is:

"Notice: *Before inflating tube or tire to desired pressure, release foot lever.*

"Warning: Do not exceed 40 pounds air pressure when inflating tubeless tires. If 40 pounds pressure will not seat beads properly, deflate, lubricate, center and re-inflate. After beads have seated properly, reduce pressure to recommended operating pressure. DO NOT STAND OVER TIRE WHEN INFLATING." (Emphasis ours.)

This seems primarily to infer caution against contributory negligence by the operator. It can also infer a statement to the operator that there is an area not covered by any part of the machine, about which the operator must himself be particularly vigilant to avoid negligent performance by any part of the machine.

After plaintiff-operator had mounted the tire, and released the rod, he proceeded to inflate it for use. The tire blew into the air above the machine, hitting plaintiff en route, breaking his arm, bruising and cutting his eye, and throwing him to the floor. The breaking of his arm was the only serious injury.

Plaintiff testified the sudden burst of air which caused the

inflated tire to fly upward was emitted in some manner between the tire and the rim. By some process, which was not clearly accounted for by plaintiff, when the tire and rim flew in the air the so-called holding rod, referred to above, was caught on a part of the machine and one of the hooks broken off.

■ Plaintiff contends this was due to a defect in the rod. Defendant contends the machine was a tire changing machine only, and not a tire holding machine, in case of a tire explosion by reason of air suddenly escaping from or adjoining the tire.

Was the holding rod a safety mechanism to hold a tire and rim from suddenly being blown into the air when a tire explosion occurs through escape of air?

Plaintiff's evidence in the case does not establish such fact. Outside of the medical testimony there were only two witnesses for plaintiff, Mr. Horace C. Knerr, a metallurgist, and Mr. Davis for himself. Mr. Knerr knew nothing about the accident. His testimony was that the iron in the hook on the holding rod was weak and defective.

The following is plaintiff's testimony about the incident:

"I was putting air into the tire and the next thing I knew the tire went up—the rod broke or we found the rod broke, the tire hit the ceiling and I found myself on the floor with a broken arm. * * *

"Q. * * * Are you acquainted of your own knowledge with the purpose of the hook that was on the other end of Exhibit 1 before it broke? A. Yes. * * *

"Q. What is this purpose? A. Well, first when you demount your tire, it's to hold your tire in place so you can take it apart and break your bead. When you mount your tire back up it served as the safety—for the same purpose. It holds the rim in place. * * *

"These machines are designed to make it easier to mount or dismount a tire. Yes, that's the purpose of the machine. If I didn't have the machine I would have to have some other way of either standing on the tire or some way of holding it down. You'd have to be down on your knees on the tire or have your foot on it or something to keep it down."

This envisions peaceful removal and replacement of a tire. This has no reference to a situation when a tire "blows up" in some manner. This is the complete substance of plaintiff's evidence. There is no evidence making the rod a safety device in case of such blowup. The machine is a "tire changing" machine only. There is nothing about the machine which guarantees against blowup when a tire is being inflated.

II. The testimony must be analyzed in the light most favorable to plaintiff when we are considering what is in effect a directed verdict for defendant. R. C. P. 344 (f) 2. Plaintiff's testimony fails to establish by substantial evidence the necessary factor of negligence on the part of the defendant.

We feel we should say the predominant weight of the evidence is in favor of defendant. We say this to illuminate the facts; not to have anything to do with our decision. If plaintiff had substantial evidence to sustain his position this would be wholly within the province of the jury.

Defendant tendered six witnesses. They were either officers or workmen of the company. They testified the rod was not a safety device. The testimony of company officer James R. Foster, a graduate of Iowa State University in engineering, was typical:

"We do not make any mention of that being a safety device [the rod]. * * * We do not try to protect against the blowup of a tire. * * * Q. Do you warn people of that fact? A. We warn them to stand away; we warn them to release the hold-down mechanism. We feel it is better for a tire to go straight up: perhaps it isn't so funny for the man who gets a broken wrist, but it's better than being dead. It's like a stick of dynamite going off. * * * The hold-down rod is far and away stronger than is necessary to do the job that it is designed to do. Yes, it broke in this case. It wasn't designed to hold down exploding tires."

III. When a manufacturer is sued in connection with an alleged defect in a machine the negligence alleged must be reasonably foreseeable and must be in connection with such part of the machine as pertains to its purpose. Odekirk v. Sears Roebuck & Co., 274 F.2d 441 (7th Cir.) ; Kapphahn v. Martin Hotel,

230 Iowa 739, 298 N.W. 901; Butters v. Chicago, M., St. P. & P. R. Co., 214 Iowa 700, 709, 243 N.W. 597, 601; Cox v. Des Moines Electric Light Co., 209 Iowa 931, 229 N.W. 244; Restatement of Law of Torts, section 395; Dubbs v. Zak Bros. Co., 38 Ohio App. 299, 175 N.E. 626; Shaw v. Calgon, Inc., 35 N. J. Super. 319, 114 A.2d 278.

The broad legal question about which this case revolves is whether or not the manufacturer of a machine is liable to an operator when injury results from a cause foreign to the purpose for which the machine was manufactured.

A general legal statement concerning this matter appears in Restatement of Law of Torts, section 395, as follows:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its *lawful use in a manner and for a purpose for which it is manufactured.*" (Emphasis ours.)

Another general statement concerning the legal question involved appears in the text by Louis Frumer and Melvin Friedman, under "Products Liability", section 15.01, which states as follows:

"In General. As previously discussed, the manufacturer is not liable for injuries resulting from abnormal or unintended use of his product, if such *use was not reasonably foreseeable.* The issue is one of foreseeability, and misuse may be foreseeable. [Emphasis ours.]

"Abnormal or unintended use is sometimes affirmatively interposed as a defense, but this (as distinguished from contributory negligence) affects plaintiff's affirmative proof of his case. If the injury resulted from an unforeseeable use of the product, judgment must go for the defendant because of failure of plaintiff's proof, either as to breach of duty or proximate

cause. There simply is no actionable negligence in the first instance."

A comprehensive article appears in Yale Law Journal, Volume 71, number 5, page 856, dated April 1, 1962, by Professor Noel of the University of Tennessee, as follows: *"Foreseeability of unintended uses.* It is established that a manufacturer's liability for negligence is restricted to situations where the product is used 'for a purpose for which it is manufactured.' If the danger arises from use of the product for some purpose which could not reasonably have been foreseen by the manufacturer, it seems clear that he should not be liable."

We discussed the question of liability in cases where a harmful consequence was not reasonably foreseeable in Kapphahn v. Martin Hotel Co., supra, at pages 747, 748 of 230 Iowa, where we said (Bliss, Judge) as follows:

" 'Foresight of harm furnishes the test of liability * * *.' 1 Street, Foundations of Legal Liability. 'In order to establish the existence of negligence, it must of course appear that there was a duty to use care and an omission to perform that duty. Whether there was a duty upon defendant to use care depends upon the probability that some harm would result to plaintiff in the absence of care.' Jeremiah Smith, Essay on Legal Cause in Actions of Tort, Selected Essays on the Law of Torts, page 695.

"This court has uniformly recognized the rule that reasonable foreseeability of harm is the fundamental basis of the law of negligence. As stated in Butters v. Chicago, M., St. P. & P. R. Co., 214 Iowa 700, 709, 243 N.W. 597, 601, 'The defendant company is not bound to safeguard against occurrences that cannot be reasonably expected or contemplated as likely to occur. As said in Cox v. Des Moines Electric Light Co., 209 Iowa 931 [229 N.W. 244, 247] : "Due care consists in guarding, not against possibilities, but only against probabilities." Any failure to ward against a result which could not reasonably have been expected is not negligence.' See also in support, Gray v. Des Moines, 221 Iowa 596, 265 N.W. 612 [104 A. L. R. 1228] ; Godbey v. Grinnell Electric & Heating Co., 190 Iowa 1068, 1078, 181 N.W. 498, 502; Burk v. Creamery Pkg. Mfg. Co., 126 Iowa

730, 734, 102 N.W. 793, 106 Am. St. Rep. 377. Our latest pronouncement in the matter is Blessing v. Welding, 226 Iowa 1178, 1182, 286 N.W. 436, 439, as follows: 'Ordinarily it is said that where a second force intervenes, liability depends upon whether or not that second force may be anticipated to be the natural and probable consequence of the negligent act of the first party.'

"In the case before us, the harmless act of the defendants was made harmful solely by the unexpectable act of a negligent third party. As said in Gant v. Gant, 197 N. C. 164, 166, 148 S.E. 34, 35, one is not required to 'stretch foresight into omniscience.' "

 Plaintiff's injury was clearly the result of an unforeseeable cause, and of a purpose for which the machine was not erected. Plaintiff's evidence does not prove, either by direct evidence or by inference, the explosion took place because of any defect in the machine. If any probable inference is to be drawn from what occurred, it would be that the hook was torn from the rod by the explosion of the tire rather than the tire's flight in the air being because of a broken hook. A jury would be in the realm of pure speculation rather than in the field of deciding a question of fact.

IV. The trial court commented, and both parties argued, at some length, as to the question of substantial evidence as opposed to a scintilla of evidence, and the question of causal connection between plaintiff's injury and the alleged defective rod. The trial court held the evidence amounted to only a mere scintilla or less, and that there was no causal connection. Having decided the case on the principal question involved, discussion of the secondary reasons for sustaining the motion is unnecessary.

The order of the trial court on the motion, and judgment thereon, is affirmed.—Affirmed.

All JUSTICES concur.