WAYNE CALKINS, appellee, v. MARVIN SANDVEN and NORTH AMERICAN MANUFACTURING Co., appellants.

No. 51116.

(Reported in 129 N.W.2d 1)

684

June 9, 1964.

John H. Mitchell, of Fort Dodge, for appellant-cross-appellee Marvin Sandven.

Gleysteen, Nelson, Harper, Kunze & Eidsmoe, of Sioux City, for appellant-cross-appellee North American Manufacturing Company.

Guthrie & Blackburn, of Webster City, for appellee-cross-appellant Wayne Calkins.

GARFIELD, C. J.—These are appeals granted by us under rule 332, Rules of Civil Procedure, from orders overruling defendants' motions for directed verdict and for judgment notwithstanding the jury's failure to return a verdict in a law action to recover, from the manufacturer and the owner of a self-unloading farm wagon, for personal injury sustained by an employee of the owner. The manufacturer is North American Manufacturing Company, herein called North American, and the owner-employer is Marvin Sandven. Plaintiff-employee is Wayne Calkins. He was severely injured when his right arm was caught in moving parts at the rear end of the wagon.

Upon the trial each defendant moved for directed verdict at the close of the evidence, mainly on the ground there was insufficient evidence of defendants' negligence which caused the injury. The jury was unable to reach a verdict. Each defendant then moved for judgment notwithstanding such failure on the ground a verdict should have been directed in accordance with the motions therefor. (See R. C. P. 243.) We granted defendants permission to appeal from these adverse rulings and granted plaintiff permission to cross-appeal from an adverse ruling on his objections to an instruction to the jury.

Principal question presented is the sufficiency of the evidence of negligence of each defendant, in the respects alleged by plaintiff, which could be found to have caused the injury. Of course in considering this question we view the evidence in the light most favorable to plaintiff. We must keep in mind, too, that generally questions of negligence, contributory negligence and proximate cause are for the jury; it is only in exceptional cases they may be decided as matters of law. (Citations unnecessary; see rule 344(f)2 and 10, R. C. P.)

I. Defendant Sandven is a farmer. Plaintiff Calkins, then 36, started to work for him in February 1961. He was injured June 12, 1961. Plaintiff had previously farmed about six years. Plaintiff lived about one and one-half miles from Sandven's place while he worked there. Trade name of the wagon in question is Grain-o-vator 40. On June 12 Sandven told plaintiff to take the wagon to a hog lot, get the corn out of it for the hogs to eat and check it thoroughly to make sure it was in running order for use the next day. Plaintiff moved the wagon to the hog lot with a tractor, got in the box and shoveled out the corn. He then oiled the inside of "the flights" in the bottom of the wagon box and alighted from it. Plaintiff then, for the first time since he worked for Sandven, started the flights or crossbars moving by starting the power take-off on the tractor attached to the wagon.

After plaintiff got down from the tractor he walked around the wagon to "check everything." As he got to the rear of the wagon he tripped and fell, his right arm caught in the opening at the rear and was injured by the moving flights or bars normally used to move the contents of the wagon from rear to front toward the unloading chute at the side of the front end. Just what plaintiff tripped over does not appear. Sandven had been feeding a lot of cattle and hogs around the lot, the ground was rough and cobs and some branches were lying there. Plaintiff testifies he was being careful.

At each of the four corners at the bottom of the wagon box was a sprocket or cogwheel. Around the bottom at each of the two sides was an endless chain which fit over the two wheels on that side. Attached to the two chains were crossbars or flights, 17 inches apart, which moved forward along the bottom of the wagon and then to the rear underneath the bottom. When the bars got to the rear they were moved upward by the chains and two rear sprocket wheels from underneath to the top of the bottom, in position to move forward again. As we have indicated, the power to move the chains and crossbars was supplied from the tractor by the power take-off.

The accompanying photo, reduced in size from an exhibit, may help visualize the rear of the wagon. There is an opening

5⅞ inches wide at the top of the end piece of the wagon. Plaintiff's arm was caught in this opening, at about the point of the arrow, so he could not extricate it.

Plaintiff had no self-unloading wagon when he himself farmed and never saw a Grain-o-vator before he worked for Sandven. The wagon in which his arm was caught usually sat in Sandven's farmyard. Plaintiff saw it there but paid no attention to what was in the rear. He says, "I didn't know whether there were any sprockets or chain or how the flights came around or anything about it. After I started it I could not see the flights moving. The only way you could see the flights moving would be up in the wagon. I didn't get up there." On cross-examination plaintiff admits he knew the chains went out beyond the end of the wagon box but he does not testify he knew the moving parts were not covered.

The evidence is in some conflict as to how close to the rear of the wagon a person must be to see the moving parts above the end piece or rear panel. Plaintiff's son, who worked with him the day of the injury, testifies one would have to be within two feet to see the moving parts at the rear end. Plaintiff says anyone standing where the photographer stood to take the photo reproduced above would not see the chain or flights. Defendant Sandven and North American's president-general manager testify the moving parts can be observed from a distance of about five feet. To this the latter witness adds, "but not completely."

A safety agricultural engineer from Iowa State University says that in guarding against major farm hazards if the objective of a machine can be obtained by completely covering the moving part, the experienced engineer tries to do so. "The principle is to guard these as effectively as you can and still obtain the purpose of the machine and if we can enclose it entirely we would do this or put some shield over it." He also testifies it surely would be feasible to shield the open space of $5\frac{7}{8}$ inches at the top of the end panel. On cross-examination this witness says, "If you look closely you can see these moving bars as they come up from this position and get the impression there is a protection by this inadequate shield that is there."

A design engineer testifies it would be feasible and relatively simple to shield the open area at the rear of the wagon so you would not accidentally get into it and explains how this could be done.

North American's president-manager says the rear-end piece serves three purposes: 1) it holds the sides of the box together at the rear; 2) a tightener bar; and 3) to protect the mechanisms and a man so he would not get entangled in the sprockets. He admits a shield could be placed over the open space without interfering with the machine's function but he felt it was adequately protected. "We did not place a shield to completely cover it because I had been a farmer and am guilty of leaving off shields as well as anybody is and I imagine with greasing that a minimum of twice a day, which I recommend, probably the shield would be left off in time to come. This tendency of farmers to remove shields and leave them off was considered when we designed the rear end."

II. The single charge of negligence submitted to the jury against North American is in designing a machine containing latently dangerous conditions capable of injury to a person working about it when, in the exercise of reasonable care, it was feasible to shield said danger without materially interfering with the function of the machine.

Two charges of negligence against defendant Sandven were submitted—in failing to provide plaintiff 1) a safe place to work, and 2) a safe instrument with which to work.

Each defendant assigns three errors in the court's refusal to direct a verdict or enter judgment against plaintiff notwithstanding the jury's failure to return a verdict. In effect, each defendant relies upon three grounds of its, or his, motion to direct. The first of these is the same—that the evidence fails to show such defendant breached any duty owing plaintiff.

North American's second assignment is that the record clearly shows it designed the wagon to guard against reasonable probability of harm to users. Its third assigned error is that plaintiff's testimony shows the cause of plaintiff's injury was his tripping and falling.

III. We consider first whether North American was entitled to a directed verdict on any ground on which it relies. The question presented is whether there is substantial evidence it was negligent in the respect alleged by plaintiff and such negligence was a proximate cause of his injury.

The broad general rule as to liability of a manufacturer of a chattel is thus stated in section 395, Restatement Torts: "A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured."

Comment c under section 395 states in part: "The particulars in which reasonable care is usually necessary for protection of those whose safety depends upon the character of chattels are (1) the adoption of a formula or plan which, if properly followed, will produce an article safe for the use for which it is sold, * * *."

Davis v. The Coats Co., 255 Iowa 13, 19, 119 N.W.2d 198, 202, quotes section 395, supra, with apparent approval. We there denied liability of the manufacturer to the injured person because the injury did not result from use of the machine in a manner and for a purpose for which it was manufactured.

Section 398 of the Restatement is a special application of the rule stated in section 395. It is: "A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel lawfully or to be in the vicinity of its probable use for bodily harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design."

The quoted rules are essentially a reflection of the general principles stated in the decisions. Annotation, 76 A. L. R.2d 91, 97.

The burden of North American's argument is that any danger from operation of the Grain-o-vator was open and obvious and it was required to protect against only such dangers as were latent or unknown to the user. The principal authority relied upon is Campo v. Scofield, 301 N. Y. 468, 95

N.E.2d 802, said to be the leading precedent in this area of the law.

There Campo was injured when his hands were caught in revolving rollers of an onion topping machine. It was held the complaint did not state a cause of action because (page 472 of 301 N. Y., page 804 of 95 N.E.2d): "Entirely lacking is the slightest suggestion [in the complaint] that the machine possessed a latent defect or a danger unknown to plaintiff; entirely lacking is any recital that the absence of guards or a stopping device was unknown to him; * * *. As we have observed, those omissions are fatal." The Campo opinion concludes (page 475 of 301 N. Y., page 806 of 95 N.E.2d): "* * * since the duty owed by a manufacturer to remote users does not require him to guard against hazards apparent to the casual observer or to protect against injuries resulting from the user's own patently careless and improvident conduct, the complaint was properly dismissed."

Aside from Davis v. The Coats Co., supra, 255 Iowa 13, 119 N.W.2d 198, already commented upon, North American cites Davis v. Sanderman, 225 Iowa 1001, 1004, 1005, 282 N.W. 717, and Lewis v. Cratty, 231 Iowa 1355, 4 N.W.2d 259. In the first of these, Davis was injured when his hand was caught in a corn shredder-silo filler. Recovery was denied on two **grounds:** 1) any dangers from use of the machine were apparent on casual inspection, and 2) defendant was at most a gratuitous bailor of the machine, deriving no advantage from the relationship, and owed no affirmative duty to his donee to see that the chattel was free from danger. It must be conceded the second of these grounds has no application here.

In Lewis v. Cratty, supra, recovery was denied on the ground plaintiff failed as a matter of law to prove his freedom from contributory negligence. Such a contention is not made here.

In our opinion it cannot be said as a matter of law, as North American argues, that the danger from use of the Grain-o-vator was open and obvious on casual inspection and plaintiff was fully aware of it. We think such question was one of fact for the jury. As stated, plaintiff had never before

operated this machine or one like it. Although he had seen it sitting in the farmyard, the jury could find he had paid no attention to the mechanism in the rear end and had no occasion to do so. Also that the uncovered moving parts in the rear were not observable except upon close inspection and upon casual inspection such parts appeared to be covered by the end piece of the wagon.

Reasonable minds might conclude the rear end was more dangerous and, in any event, that the mechanism was much less obvious than if the end piece had been omitted from the design. This was apparently the view of plaintiff's safety expert when he testifies, "If you look closely you can see these moving bars as they come up from this position and get the impression there is a protection by this inadequate shield that is there."

█ As bearing upon the claimed failure of defendant to comply with the standard of due care in designing and building the machine, it was proper for plaintiff to offer evidence it was feasible to shield the open space at the rear end. Varas v. Barco Mfg. Co., 205 Cal. App.2d 246, 22 Cal. Rptr. 737, 744, and citations.

IV. As stated, North American asserts the record clearly shows it designed the Grain-o-vator to guard against reasonable probability of harm to users. Its only brief point in support of this assertion adds to it, "and that plaintiff's accident could not have been reasonably foreseen." In argument we are told, "The tripping and falling of plaintiff into the machine at just the right second could hardly have been foreseen by the manufacturer as a probability."

█ Liability of either defendant does not depend upon a finding it (or he) should have foreseen the precise manner in which a person using the machine would be injured in doing so. Restatement Torts, section 435, says: "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm *or the manner in which it occurred* does not prevent him from being liable" (emphasis added).

We have frequently expressed substantially this same rule. Priebe v. Kossuth County Agr. Assn., Inc., 251 Iowa 93, 100, 99 N.W.2d 292, 296, states: "In order to constitute negligence it is not necessary that defendant could have foreseen the particular injury that resulted provided it should have foreseen its omission to act would probably result in injury of some kind to some person" (citations).

Frederick v. Goff, 251 Iowa 290, 298, 299, 100 N.W.2d 624, 629, quotes section 435 of the Restatement with approval, repeats the above language from the Priebe opinion and cites other Iowa decisions expressing much the same thought. Gray v. City of Des Moines, 221 Iowa 596, 599, 600, 265 N.W. 612, 613, 104 A. L. R. 1228, 1230, cites many of our earlier cases to like effect. See also Lockwood v. Wiltgen, 251 Iowa 484, 490, 101 N.W.2d 724, 728 (" 'The particular result need not be such as that it should have been foreseen'.").

We think reasonable minds could conclude defendant should have foreseen injury of some kind to someone using the Grain-o-vator would be probable.

V. North American's final contention is, as indicated, that plaintiff's testimony shows the cause of his injury was his tripping and falling. We hold the issue of proximate cause was for the jury.

The general rules as to causal relation necessary for responsibility for negligence are set out in Restatement Torts, sections 430 to 435. (We have quoted 435.) Christensen v. Sheldon, 245 Iowa 674, 682, 63 N.W.2d 892, 897, 48 A. L. R.2d 522. Section 431 states: "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."

Section 434 provides that if the question whether the actor's conduct is a substantial factor in bringing about harm to another is open to a reasonable difference of opinion, it is to be left to the jury.

We have used this language quite similar to section 431 of the Restatement: "Nor will the fact that some other

cause operates with the defendant's negligence to produce the injury relieve the defendant if the injurious result is traceable *in some material degree* to his want of due care" (citations) (emphasis added). Swaim v. Chicago, R. I. & P. Ry. Co., 187 Iowa 466, 471, 174 N.W. 384, 386. The case has been frequently cited with approval on the question of proximate cause. See, e.g., Lockwood v. Wiltgen, supra, 251 Iowa 484, 491, 101 N.W.2d 724, 728.

Reasonable minds could conclude that although plaintiff's tripping caused him to fall, the absence of an effective shield at the rear of the machine was a substantial factor in causing his injury and hence was a proximate cause thereof. Quite in point are Bales v. McConnell, 27 Okla. 407, 112 P. 978, 40 L. R. A., N. S., 940, and cases there cited.

No question of privity is presented.

VI. As before stated, defendant Sandven's first assigned error is the same as North American's—that the evidence fails to show he breached any duty owing plaintiff. His second assignment asserts the record shows plaintiff was familiar with the operation of the Grain-o-vator. His third assignment asserts there is no evidence Sandven failed to furnish plaintiff a safe place to work or safe machinery or to warn plaintiff and that any risk involved was only the risk ordinarily present in the use of farm machinery.

An employer must use reasonable care to provide a reasonably safe place for his employees to work and reasonably safe machinery with which to work. Von Tersch v. Ahrendsen, 251 Iowa 115, 118, 119, 99 N.W.2d 287, 289, 79 A. L. R.2d 267, and citations.

"It has often been said by courts in actions brought by a farm employee for injuries received while machinery was in use on the farm, that under appropriate circumstances his employer owes him a duty to furnish him a reasonably safe place in which to work; to furnish him with reasonably safe machinery * * * and to furnish guards, covers, or other safety appliances for such machinery" (Annotation, 67 A. L. R.2d 1120, 1130–1132).

If in the exercise of reasonable care under the cir-

cumstances defendant Sandven should have covered the open space at the rear of the wagon or should have warned plaintiff of the danger, if any, from using it in its then condition, it was his duty to do so. Of course, neither Sandven nor his codefendant was an insurer of plaintiff's safety. Johnson v. Kinney, 232 Iowa 1016, 1027, 7 N.W.2d 188, 194, 144 A. L. R. 997, 1006, and citations.

The duty Sandven owed plaintiff is very similar to that of North American. There seems to be insufficient logical or sound basis for holding a jury question was presented as to only one of these defendants.

Sandven's assertion the record shows plaintiff was familiar with the operation of the Grain-o-vator is sufficiently disposed of by what we say in deciding the appeal of North American.

Plaintiff's petition alleges Sandven was negligent in failing to warn plaintiff of the latently dangerous condition and design of the machine. There is evidence defendant used this Grain-o-vator more than two years before plaintiff was employed by him and two and one-half years before the accident. (He acquired it at a farm sale.) There is ample support for a finding defendant was much more familiar with the machine than plaintiff was. See as to the employer's duty to warn his employee of dangers not open and obvious Von Tersch v. Ahrendsen, supra, 251 Iowa 115, 120, 99 N.W.2d 287, 290, 79 A. L. R.2d 267, and citations; Venden v. Meisel, 2 Wis.2d 253, 85 N.W.2d 766, 770, 771; 35 Am. Jur., Master and Servant, sections 184, 256, 257; 56 C. J. S., Master and Servant, section 284.

The evidence is insufficient to show Sandven failed to provide plaintiff a safe place to work except as the Grain-o-vator may be considered part of his place to work. Erickson v. Erickson, 250 Iowa 491, 498, 94 N.W.2d 728, 732, holds there was substantial evidence defendant was negligent in not furnishing that plaintiff with a safe place to work. The main fact in support of the holding was the presence of two uncovered bolts extending out one-half to three-fourths inch from the surface of discs in an unloading wagon plaintiff was

using. It is apparent the wagon was there considered part of the place provided for plaintiff's work.

█ In any event we think a jury question was presented here as to whether Sandven was negligent in failing to provide plaintiff a safe instrument with which to work and failing to warn him of the danger of using the Grain-o-vator. See in support of our holding Erickson v. Erickson, supra, 250 Iowa 491, 94 N.W.2d 728; Von Tersch v. Ahrendsen, supra, 251 Iowa 115, 99 N.W. 287, 79 A. L. R.2d 267; Frederick v. Goff, supra, 251 Iowa 290, 100 N.W.2d 624. All are unanimous decisions. See also Cathey v. De Weese, Mo., 289 S.W.2d 51; Lund v. Knoff, N. D., 85 N.W.2d 676, 67 A. L. R.2d 1110; Hopper v. Gallant, 46 Wash.2d 552, 282 P.2d 1049; Venden v. Meisel, supra, 2 Wis.2d 253, 85 N.W.2d 766.

See also 35 Am. Jur., Master and Servant, section 191, from which we quote these excerpts: "* * * the general tendency is to hold the employer negligent in failing to guard dangerous appliances. * * * Of course, if it can be shown that an injured employee was not informed of or did not appreciate the danger of the unguarded appliance, it is not to be supposed that a recovery will be denied by any court."

Our holding is that the issue of negligence of each defendant was for the jury.

█ VII. Plaintiff cross-appealed, with our permission, from the overruling of his objections to instruction 12 to the jury. It is the main instruction on plaintiff's charge of negligence against North American, referred to in Division II hereof. It states in part, "You are instructed that a latent condition is one that exists in such a way that discovery is impossible by the exercise of reasonable inspection and care." The statement is part of an instruction North American requested. Plaintiff objected to it in part as not the law of Iowa and an overstatement of the rule of latent and patent dangers as it may exist in other jurisdictions.

We think, as applied to the present case, the quoted language was error. It was taken from the opinion in Benedict v. Eppley Hotel Co., 159 Neb. 23, 28, 65 N.W.2d 224, 228, in which the term "latent defect" is used in quite a different sense.

Plaintiff there was injured by the collapse of a folding chair on which she was sitting. Defendant contended it was not liable because the defect in the chair was latent and could not have been discovered by reasonable care. In rejecting the contention, the language quoted from instruction 12 here was used.

Garshon v. Aaron, 330 Ill. App. 540, 71 N.E.2d 799, 801, uses somewhat similar language in rejecting a landlord's defense that the defect in a stair railing which gave way, causing the injury, was latent.

The duty of an innkeeper who furnishes chairs for his guests and of a landlord who provides a common stairway for his tenants differs from that of a servant to whom his master has provided tools and machinery. The servant is ordinarily under no duty to inspect such tools and machinery. The duty of inspection is the master's. The servant may assume, in the absence of knowledge to the contrary, he has been furnished tools and machinery that are reasonably safe. Warner v. Spalding & Kearns, 186 Iowa 137, 144–147, 172 N.W. 263, and citations; Johnson v. Minneapolis & St. L. R. Co., 183 Iowa 101, 110–113, 165 N.W. 51; Parkhill v. Bekin's Van & Storage Co., 169 Iowa 455, 465–467, 469, 470, 151 N.W. 506; 56 C. J. S., Master and Servant, sections 238, 239.

35 Am. Jur., Master and Servant, section 141, states: "The duty of an employer to * * * furnish them with safe tools and appliances with which to work, carries with it the duty to inspect * * * the tools, machinery, and appliances with which their labor is performed. * * * There is no duty on employees themselves to make such inspection unless they are expressly charged with that duty."

The jury would be apt to believe from the quoted part of instruction 12 it was plaintiff's duty to inspect the Grain-o-vator and if it was possible for him to discover, by reasonable inspection and care, the unguarded moving parts at the rear end he could not recover.

Webster's Third New International Dictionary contains these definitions of "latent": "existing in hidden, dormant, or repressed form but usually capable of being * * * brought to light; * * * not manifest." It states, "Latent applies to

that which is submerged and not clearly apparent or certainly present to any but a most searching examination * * *."

26A C. J. S., page 133, says in part a latent defect is "A hidden defect; a defect not manifest, but hidden or concealed, and not visible or apparent; * * *." Some decisions say a latent defect, within the rule that a business owner is not liable to an invitee for latent defects, must be one which could not be discovered by the exercise of ordinary and reasonable care, omitting any reference to inspection. McGourty v. Chiapetti, 38 Ill. App.2d 165, 186 N.E.2d 102, 106; Kordig v. Northern Constr. Co., 18 Ill. App.2d 48, 151 N.E.2d 470, 473.

Latent dangers have been defined as those not apparent from casual observation. Kagan v. Eisenstadt, Fla. App., 98 So.2d 370, 371.

It is clear "latent" has several meanings.

 We think the words "latently dangerous condition," as used in plaintiff's charge of negligence against North American, mean a dangerous condition not obvious and not apparent by the exercise of ordinary care.

 Plaintiff argues it was not required to prove a "latently" dangerous condition. Since such is his charge of negligence the trial court was justified in requiring proof thereof.— Affirmed on defendants' appeals; reversed on plaintiff's cross-appeal, and remanded.

STUART, J., dissents.

All other JUSTICES concur except HAYS, J., not sitting.

STUART, J. (dissenting)—While recognizing that I must be in error, I cannot in good conscience join my colleagues in the majority opinion and therefore feel compelled to set forth my reasons, briefly.

As stated in the majority opinion, "the single charge of negligence submitted to the jury against North American is in designing a machine containing latently dangerous conditions capable of injury to a person working about it when, in the exercise of reasonable care, it was feasible to shield said danger without materially interfering with the function of the machine." This specification is in accordance with the present

Iowa law, which will be broadened by the apparent approval of the language of section 395, Restatement of Torts.

I agree there is evidence from which the jury could find the Grain-o-vator was negligently designed. I am not convinced the jury could properly find plaintiff did not know of the condition. There is much in his testimony to indicate knowledge, including his statements on direct examination:

"When I started around the wagon I tripped and fell. I was pretty close to the Grain-o-vator when I tripped. I was just far enough away to make sure I could check everything and not get tangled up in it. I was being careful."

I could, however, accept the majority's view that a jury question was presented on his knowledge and do not base my dissent upon this proposition, but rather upon my view that a *latently* dangerous condition in the design could not possibly have been a proximate cause of plaintiff's injury.

The record is clear that plaintiff tripped over something and as he fell his arm inadvertently became entangled in the moving bars on the rear of wagon which were covered only to the extent described in the majority opinion. There is nothing in the record to indicate he placed his arm in this position because he did not know the bars were uncovered or would not have placed his elbow where he did had he realized the bars were uncovered. His elbow came in contact with the bars as a matter of chance in his reflex action in attempting to keep from falling. Plaintiff admits a warning sign would have been of no avail. Knowledge of the existing condition would have made no difference. His arm would still have become entangled. Since knowledge would have made no difference, negligence in designing the wagon with a latently dangerous condition could not possibly have been a proximate cause of the injury, for knowledge of the condition removes the latent danger.

The majority opinion holds there is a jury question as to Sandven's negligence in failing to provide plaintiff a safe instrument with which to work and failing to warn him of the danger of using the Grain-o-vator. The arguments on proximate cause stated above apply with equal force to the failure to warn and will not be repeated.

In addition I am concerned about the obligation this decision places upon the farmer to furnish a safe instrument with which to work. The Grain-o-vator was in the same condition as delivered from the factory. No shields had been removed. No makeshift repairs had been made creating additional hazards. This decision will require the farmer to second-guess the manufacturer and to alter equipment, which after an accident appears to have been capable of safer design. He cannot accept the machine as delivered but must discover the need for and add additional safety protection.

In my opinion this is much too great a burden to place upon the average Iowa farmer. He should be able to rely upon the manufacturer who must have more experience and better facilities for testing and experimentation.

Even plaintiff's expert, Dr. Norval Wardle, a safety agricultural engineer for Iowa State University, who testified it was feasible to design a shield over these parts which would not interfere with its operation, admitted that the identical machine has been used at the college for a year without shields. He said: "There is no shield in the rear. We did put some shields on the front end of the machine that were not provided. We put a cover on the power take-off, but there was no cover put on the rear of the machine."

It places too great a burden on the farmer if a jury would be permitted to find he was negligent in not altering a machine from its delivered condition and in failing to add a safety device which a safety engineer looking for these very things felt no responsibility to install.